COMMONWEALTH *vs.* HERBERT LeBLANC. March 6, 1981. The defendant was found guilty by a jury of mayhem and assault and battery with a dangerous weapon, for which he was sentenced to concurrent terms of from fifteen to sixteen years and from eight to ten years, respectively. The jury found him not guilty on indictments for attempt to murder by stabbing and by strangulation, assault with intent to rape, and

armed assault with intent to murder. The victim, a young woman, was assaulted in her North Adams home by a man she identified as the defendant and suffered twenty-four stab wounds and cuts on her face, neck, chest, back and hands. We affirm the judgments of conviction.

1. The prosecutor was entitled in his opening to say that he "intended to show that [the defendant] was a former inmate at Monroe," a State prison camp. The victim identified her assailant to a police officer as "an ex-Monroe inmate, or current prison inmate," making the defendant's status as a Monroe parolee material to identification. The defendant does not argue that the opening statement was made in bad faith (*Commonwealth* v. *Breese*, 381 Mass. 13, 15-16 [1980]) or that such evidence would have been inadmissible to corroborate the identification. *Commonwealth* v. *Clark*, 3 Mass. App. Ct. 481, 486 (1975). *Commonwealth* v. *Kines*, 5 Mass. App. Ct. 632, 634-635 (1977), cert. denied, 434 U.S. 1076 (1978). (The Commonwealth did not prove directly that the defendant had been in Monroe, though the defendant's brief indicates that the prosecutor might have done so and refers to this restraint as a "commendable display of caution.") Rather, the defendant argues that he was irretrievably prejudiced by the opening. But that argument fails, for it is not predicated on demonstrated error. The function of the opening at a trial was clearly explained to the jury in the judge's charge, and they were admonished in the charge (and throughout the trial) that "[y]ou must find the facts from the evidence and circumstances as you have heard them described by the testimony of witnesses and from the Exhibits . . . ." Compare *Commonwealth* v. *Breese*, 381 Mass. at 15. Cf. *Commonwealth* v. *Bearse*, 358 Mass. 481, 487 (1970).

2. The trial judge was not required to poll the jury when two newspaper articles reporting the proceedings in detail and published on the fourth and fifth days of the trial were brought to his attention by defense counsel on the following mornings. Since this case arose before *Commonwealth* v. *Jackson*, 376 Mass. 790, 800-801 (1978), we are not concerned with the prospective requirement for polling the jury set out in that case. We look to see if the steps taken by the trial judge were adequate to obviate such prejudice as might have arisen from the jury's having read the articles. *Commonwealth* v. *Crehan*, 345 Mass. 609, 613 (1963). In the exercise of his discretion, the judge chose instead of polling the jury to give immediate "strong instructions" when the first article was presented to him and further instructions the following day when the second article was shown to him. *Commonwealth* v. *Balakin*, 356 Mass. 547, 554 (1969). *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. 188, 297-298 (1971), cert. denied, sub nom. *Farrell* v. *Massachusetts*, 407 U.S. 910, and sub nom. *Beneficial Fin. Co.* v. *Massachusetts*, 407 U.S. 914 (1972). *Commonwealth* v. *Benjamin*, 3 Mass. App. Ct. 604, 641-642 (1975). See *Commonwealth* v. *Crehan*, 345 Mass. at 613-614. We think those instructions were adequate. They were further reinforced by similar admo-

nitions during the trial and in the charge. *Commonwealth* v. *Stanley*, 363 Mass. 102, 106 (1973). *Commonwealth* v. *Benjamin*, 3 Mass. App. Ct. at 641-642. Moreover, the prejudice (see *Worcester Tel. & Gazette, Inc.* v. *Commonwealth*, 354 Mass. 578, 580 [1968]) in the statements made in the articles that the defendant had been returned to Walpole was minimized by the evidence already before the jury with reference to the defendant's incarceration at the Monroe prison camp (see point 1), from which the jury could gather (see *Commonwealth* v. *Cook*, 380 Mass. 314, 317 n.6 [1980]) that the defendant had been convicted of a crime and sentenced to a correctional institution of the Commonwealth from which he had been transferred to Monroe. See G. L. c. 127, § 83A and § 83B. *Commonwealth* v. *Bartoloni*, 2 Mass. App. Ct. 152, 157-158 (1974). *Commonwealth* v. *Benjamin*, 3 Mass. App. Ct. at 642, citing *Commonwealth* v. *Balakin*, 356 Mass. at 554. See also *Commonwealth* v. *Stanley*, 363 Mass. at 105. In the circumstances the statement in the article that the defendant had been returned to Walpole without any indication of the nature or seriousness of the crime is of little significance, nor does the defendant argue otherwise.

3. From our examination of the charge as a whole we conclude that the jury could not have failed to understand that a conviction for mayhem (G. L. c. 265, § 14) requires a specific intent to maim, i.e., a specific intent to "inflict [      ] . . . some serious bodily injury."[1] *Commonwealth* v. *Farrell*, 322 Mass. 606, 619 (1948). *Commonwealth* v. *Hogan*, 7 Mass. App. Ct. 236, 246 n.11, *S.C.* 379 Mass. 190 (1979). See 57 C.J.S., Mayhem § 1 (1948). We note that the jury carefully discriminated between the indictment for mayhem and the indictments, including armed assault with intent to murder and assault with intent to rape, of which the defendant was found not guilty.

4. The claim of inadequacy of counsel is based on (a) trial counsel's failure to file a motion to suppress bloodstained clothing found in the defendant's house and in his automobile and (b) trial counsel's closing argument.

(a) The decision of trial counsel not to file a motion to suppress does not necessarily suggest inadequacy. *Commonwealth* v. *Cross*, 4 Mass. App. Ct. 54, 56-57 (1976). *Commonwealth* v. *Schlieff*, 5 Mass. App. Ct. 665, 668 (1977). *Commonwealth* v. *Simon*, 6 Mass. App. Ct. 894 (1978). The police entered the defendant's apartment on an arrest warrant; they did not find him there, but did find some bloodstained clothing. We cannot say on the record before us that a motion to suppress the clothing would have succeeded. The question whether the police could enter the defendant's house without a search warrant in order to make an arrest requires an assessment of the credibility of the police officers and of all the circumstances, some of which may not be before us. *Commonwealth* v. *Cundriff*, 382 Mass. 137, 145-148 (1980) (entry with only an ar-

---

[1] The defendant, in his brief, concedes that intent to inflict serious bodily injury is sufficient and argues the case on the footing that no such specific intent was properly charged.

rest warrant; "our common law rule [is] that officers cannot make an un-announced entry into a dwelling house except in limited circumstances . . . ." *Id.* at 139-140 [footnote omitted]). *United States* v. *Phillips*, 497 F.2d 1131, 1135-1136 (9th Cir. 1974).[2]  Cf. *Commonwealth* v. *Schlieff*, 5 Mass. App. Ct. at 669.  Such matters and the inadequacy of counsel in this connection can best be decided in proceedings for postconviction relief joined with a direct appeal.  Mass.R.Crim.P. 30(a) and (b), 378 Mass. 900 (1979).  As we said in *Commonwealth* v. *Cross*, 4 Mass. App. Ct. at 57: "An assessment of the record is particularly difficult where, as here, the claim is made on direct appeal rather than by the customary motion for a new trial or in some circumstances by [the equivalent under the rules of criminal procedure of] a writ of error."  See *Commonwealth* v. *Simmons*, 383 Mass. 46, 54-55 (1981).  See also *Commonwealth* v. *Hill*, 375 Mass. 50, 53 (1978); *Commonwealth* v. *Cook*, 380 Mass. at 320. (Thus, it is understandable why appellate counsel did not argue in any detail the considerations set out in *Cundriff* and *Phillips*.)  Thus, too, since the search warrant and affidavit on the basis of which the bloodstained jacket in the defendant's automobile was seized are not before us, it is purely speculative whether a motion to suppress would have availed the defendant.  *Commonwealth* v. *Cross*, 4 Mass. App. Ct. at 57.

(b) Appellate counsel's claim that trial counsel should have argued that the victim was mistaken rather than lying (obviously a matter of tactics) might well have accomplished much less for the defendant, who was acquitted of assault with intent to rape and three other charges.  Indeed, in view of the victim's testimony that she knew the defendant previously (corroborated by the defendant's testimony and her opportunity to see the defendant), appellate counsel's argument is, to say the least, unpersuasive. Trial counsel's argument, read as a whole, does not strike us as inadequate. His contention that the wounds were "self-inflicted" was indeed farfetched, but it did not discredit the defendant or his counsel, as is manifested from the jury's verdicts.  On the indictments before us there was not much the defense could do.  *Commonwealth* v. *Brown*, 9 Mass. App. Ct. 609, 612 (1980).  The other assertions of inadequacy made by appellate counsel do not rise to the level of argument and we need not consider them.  Cf. *Commonwealth* v. *James*, 8 Mass. App. Ct. 928, 929 (1979); *Commonwealth* v. *Harris, ante* 165, 177-178 (1981).

*Judgments affirmed.*

---

[2] In that case the court held: "An agent must have probable cause to believe that the person he is attempting to arrest, with or without a warrant, is in a particular building at the time in question before that agent can legitimately enter the building by ruse or any other means."  The court also quoted from *United States* v. *Watson*, 307 F. Supp. 173, 175 (D.D.C. 1969): "[A]bsent consent, [an] officer cannot enter by any means, breaking or otherwise, unless he has responsible cause to believe the defendant is within" (footnote omitted).

*William J. Leahy* for the defendant.
*Daniel A. Ford,* Assistant District Attorney, for the Commonwealth.