## Commonwealth *vs.* Francisco Mercado.

Suffolk.  March 3, 1981. — May 5, 1981.

Present: Hennessey, C.J., Braucher, Liacos, Abrams, & Nolan, JJ.

*Practice, Criminal,* Disclosure of evidence, Suppression of evidence by prosecutor, Assistance of counsel, Instructions to jury, Failure to make objection. *Homicide. Self-Defense.*

A defendant was not entitled to a new trial of a murder charge on the ground that the Commonwealth permitted the impression created by a police officer's testimony that he had not detected any odor of alcohol on the victim shortly before she was killed to go uncorrected even though the prosecutor learned, subsequent to the testimony, that the victim's medical record indicated the presence of alcohol in her system where there was no suggestion that the officer was not telling the truth, where the officer's testimony was not inconsistent with the medical record, and where defense counsel who was aware of the medical record chose not to challenge the officer's testimony on that issue. [523-526]

At a murder trial, the defendant was not denied effective assistance of counsel by his attorney's failure to solicit expert assistance in interpreting the victim's medical record where the fact the victim was intoxicated at the time of the murder, as shown by the medical record, was already known by defense counsel and that information from the medical record was not necessary to place the fact before the jury. [526-528]

The failure of a defendant charged with murder to request an instruction that the use of excessive force in self-defense reduces the crime of murder to manslaughter or to object to the judge's omission of such an instruction precluded appellate review of the claimed deficiency in the judge's charge. [528]

Indictment found and returned in the Superior Court on September 21, 1976.

The case was tried before *Travers*, J., and a motion for a new trial was heard by him.

The Supreme Judicial Court granted a request for direct appellate review.

*Steven J. Rappaport* for the defendant.

*Philip Beauchesne*, Assistant District Attorney, for the Commonwealth.

NOLAN, J.  Following a trial to a jury in the Superior Court, the defendant, Francisco Mercado, was convicted of murder in the second degree on an indictment charging murder in the first degree.  His trial counsel did not file a timely claim of appeal.  Subsequent defense counsel filed a motion for a new trial, which was denied after an evidentiary hearing.  The defendant appealed from the denial of his motion.  Additionally, he filed a motion for leave to file a late claim of appeal of the trial.  A single justice of the Supreme Judicial Court allowed the motion and consolidated the two appeals.  The consolidated appeal is before this court pursuant to G. L. c. 278, § 33E.  We affirm the judgment and the denial of the motion for a new trial.

We briefly summarize only that evidence presented at trial which is necessary to a determination of this appeal.  Further facts will be elaborated when relevant to the discussion of a specific issue.  On the evening of May 1, 1976, the defendant went to the apartment of Luz Cintron, the victim, with whom he had lived for at least six to eight months.  She was not at home, so the defendant requested Mayda Cintron, the victim's eleven year old daughter, to go and find her mother.  When Mayda and her mother arrived home, the defendant was gone.  Cintron again left her apartment.  The defendant subsequently returned and again told Mayda to get her mother; again, she did so.  When Cintron entered the apartment, the defendant grabbed her hair, dragged her into the bedroom, and locked the door.  Mayda heard the sounds of a struggle.  She telephoned the police when her mother called out to her to do so.  Two police officers arrived shortly thereafter.

When the police arrived, Cintron told them that Mercado had been hitting her, and that she wanted him to leave the apartment.  At that time he was lying in the bed clad only

in his undershorts; Cintron was fully dressed.  After some discussion about the ownership of the bedroom suite, the police told the defendant to leave the premises.  He dressed, and was escorted from the house by the officers.  They told the defendant not to return to the apartment that evening, and that if he did so he would be arrested.

After the police left, the defendant attempted to enter the locked apartment by using his key.  Mayda and her mother held the door against him, but he forced his way into the apartment.  Once inside he went immediately into the kitchen, picked up a knife, and ran out to Cintron.  She pushed Mayda out of the first floor window, then jumped out after her daughter.  The defendant ran out the front door, again grabbed Cintron by the hair, and repeatedly banged her head against the sidewalk.  He also stabbed her. Screaming and crying, Mayda watched this assault on her mother from a distance of approximately six feet.  Knife in hand, the defendant then chased Mayda, but she eluded him.

A second eyewitness, fifteen year old Tanya Turner, was baby-sitting at an apartment across the courtyard from Cintron's apartment.  When she heard Mayda screaming, she went to the window.  She observed the defendant bending over Cintron, making up and down motions.  He had something "long and silver" in his hands.  She also observed the defendant chase Mayda, who ran off.

Cintron died seven days later of an injury to the brain consistent with having received a blunt force applied to the head.  Cintron also suffered stab wounds and bruises.

The defendant's testimony contradicted that given by the two eyewitnesses and the police officers.  He stated that on the evening of May 1, 1976, he went to Cintron's apartment where he lived, undressed, and went to bed.  When the police arrived unexpectedly, he left the apartment with them, but later went back upstairs to get the rest of his clothes.  He stated that the officers had given him permission to do so.  When he returned to the apartment, Cintron pushed Mayda out of the window, then jumped on him, tearing his shirt.  He left the apartment through the

door and Cintron jumped out the window. When he arrived outside, Cintron attacked him again with a knife. Fearful, he pushed her once, forcefully, then left immediately for his father's home. Mayda ran off.

The defendant presents three arguments on appeal. Relying on information presented at the hearing for a new trial, he argues first that the Commonwealth knowingly allowed a false impression to go uncorrected at trial, an impression which reasonably could have affected the judgment of the jury. Second, he argues that he was denied effective assistance of counsel at trial, an issue he has not previously argued. Third, he contends that the trial judge's charge to the jury on the issue of self-defense was constitutionally deficient, an issue presented to but not decided by the judge at the hearing on the defendant's motion for a new trial. Although he appeals from the denial of his motion for a new trial, in addition to appealing from the trial itself, the defendant does not specifically challenge any of the findings made by the judge. Instead, he argues that these three related issues combined to deny him due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and arts. 10 and 12 of the Declaration of Rights of the Constitution of the Commonwealth. Hence, he argues that, to prevent a substantial risk of a miscarriage of justice, this court should order a new trial pursuant to G. L. c. 278, § 33E.

1. *False impression of evidence upon the jury.* In his amended motion for a new trial,[1] the defendant claimed that newly-discovered evidence revealed high concentrations of methanol and ethanol in the victim's system at the time of her admission to the hospital; that the Commonwealth had suppressed this evidence; and that this evidence

---

[1] The defendant originally filed a motion for a new trial alleging errors in the charge regarding malice and self-defense. Subsequently, the two allegations were incorporated into an amended motion. On appeal, he has not raised the claimed error with regard to the judge's instructions on the element of malice. Assignments of error not briefed are deemed waived. *Commonwealth* v. *Amazeen*, 375 Mass. 73, 74 n.1 (1978).

would have supported his claim of self-defense by allowing the jury to consider the possible effect of alcohol intoxication on the victim's state of mind, and its possible role in her unprovoked attack upon the defendant.[2]  In denying the motion, the judge found that while the medical record in the Commonwealth's possession confirmed the presence of alcohol in the victim's system, trial counsel had also possessed a copy of the medical record.  Furthermore, trial counsel had been told by the defendant of the victim's drinking habits and her purported propensity towards drunkenness.  Therefore, the evidence was neither newly-discovered nor suppressed.

On appeal the defendant does not challenge these findings.  He does argue, however, that the Commonwealth allowed a false impression regarding the victim's intoxication to go uncorrected before the jury.

As part of its case-in-chief, the Commonwealth called the two police officers who had responded to Mayda's telephone call for assistance, and who had told the defendant to leave the victim's apartment.  In response to a question on direct examination, one of the two police officers, Rinaldo Vialpondo, testified that he did not detect any odor of alcohol on either the defendant or the victim.  Subsequent to this testimony, and prior to the end of the trial, the prosecutor was made aware for the first time that certain figures in

---

[2] The "newly discovered evidence" consisted of figures listing the concentration of methanol and ethanol in the victim's system, as appearing on the discharge summary of the victim's hospital records.  The figures as listed stated a level of alcohol in the blood far in excess of a fatal level.  Both the prosecution and the defense had copies of the discharge summary prior to trial.  At the hearing on the motion for a new trial, the defendant argued that this evidence was material to the cause of death of the victim, as well as to her state of mind.  Expert evidence as to the cause of death was presented, establishing that a clerical error on the discharge summary had listed an incorrect concentration of alcohol in the victim's system.  The judge found that her death resulted from a brain injury, as stated at trial.  Upon reviewing the transcript of the hearing, we note that the evidence overwhelmingly supports this finding.  There was no error.  See *Commonwealth* v. *Grace*, 370 Mass. 746, 751-754 (1976), and cases cited.  On appeal, the defendant does not challenge this finding.

Cintron's medical record indicated the presence of alcohol in her system on the evening in question. The defendant contends that the prosecution had an affirmative duty to correct the unintentional false impression concerning the victim's condition left by Officer Vialpondo's testimony.

In support of his contention, the defendant argues that this case is controlled by a pair of United States Supreme Court decisions establishing that, even when the State does not solicit false evidence, it may not allow false evidence to go uncorrected when it appears. *Napue* v. *Illinois*, 360 U.S. 264, 269 (1959). Furthermore, the defendant's argument continues, a new trial is required if the uncorrected false testimony reasonably could have affected the judgment of the jury. See *Giglio* v. *United States*, 405 U.S. 150, 154 (1972). These cases do not control here. Indeed, the facts set forth by the defendant in support of his argument do not meet the threshold test set out in *Napue* and *Giglio*. There is no suggestion that Officer Vialpondo was not telling the truth, as he knew it. He did not testify as a fact that the victim had not been drinking. When he was questioned as to whether he had noticed any odor of alcohol on either the defendant or Cintron, he simply replied, "None whatsoever, no." That answer is not inconsistent with the information in Cintron's medical record establishing, as the judge found at the hearing for a new trial, that Cintron was mildly intoxicated at the time she was admitted to the hospital. Instead, the answer reflected Vialpondo's own observations at the victim's apartment.

Moreover, at the time Officer Vialpondo testified, the defendant's trial counsel knew of Cintron's drinking habits and of the possibility, according to the defendant, that she had been drinking that night. Additionally, the trial counsel testified at the hearing on the motion for a new trial that he was aware from Cintron's medical record that she in fact had alcohol in her blood system that evening. Nevertheless, counsel chose not to cross-examine Officer Vialpondo on the issue, nor to impeach his credibility by questioning his observations.

The rule of *Napue* and *Giglio* does not apply to these facts. The defendant would have us extend the rule by placing a burden on the Commonwealth to prevent possible false inferences drawn by the jury. We decline to do so. Cf. *Commonwealth* v. *Daigle*, 379 Mass. 541, 547 (1980) (*Napue* and *Giglio* do not control unintentional introduction of false testimony). The defendant has shown no prejudice. See *Commonwealth* v. *Ellis*, 373 Mass. 1, 9-10 (1977). There was no error.

2. *Ineffective assistance of counsel.* In this appeal, the defendant raises for the first time the argument that he was denied effective assistance of counsel at trial. He bases this argument on the fact that his trial counsel did not seek expert help in interpreting the victim's medical record. Although the defendant did not argue this theory at the hearing on his motion for a new trial, we will nevertheless review the record of the case on this question in order to prevent a miscarriage of justice. Cf. *Commonwealth* v. *Johnson*, 379 Mass. 177, 178 (1979).

At the hearing on the motion for a new trial, the defendant's trial counsel testified for the defendant. He stated that the defendant had informed him that the victim was a heavy drinker and that she was intoxicated that night. Therefore, he had considered her alleged alcoholism as one factor in devising his trial strategy. He also stated, however, that had he been properly apprised of the victim's alcohol levels, he would have attempted to negotiate a manslaughter plea, and would have changed his trial tactics. Additionally, he testified that parts of the medical record were illegible, that he lacked expertise as to the rate of metabolism of alcohol, but that he did not consult an expert for assistance in interpreting the record.

In assessing whether a defendant has been denied the effective assistance of counsel, we engage in a two-step inquiry. A defendant must show both (1) "that the conduct of his trial counsel fell 'measurably below that which might be expected from an ordinary fallible lawyer,'" *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), and (2) that

"prejudice result[ed] therefrom," *Commonwealth* v. *Sellon*, 380 Mass. 220, 223 (1980), quoting from *Commonwealth* v. *Rondeau*, 378 Mass. 408, 412 (1979). When the tactical or strategic judgments of an attorney are called into question, the defendant must show the judgment to be "manifestly unreasonable," *Commonwealth* v. *Adams*, 374 Mass. 728 (1978), which typically means the loss of "an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian, supra.*

In this case we need not consider the alleged deficiency in the behavior of counsel, but may proceed directly to the second step of the inquiry. See *Commonwealth* v. *Mains*, 374 Mass. 733, 738 (1978). See also *Commonwealth* v. *Sellon, supra* at 226. Compare *Commonwealth* v. *Williams*, 378 Mass. 217, 238-241 (1979). However, we note that in his own affidavit in support of the amended motion for a new trial, present counsel stated "[t]hat it can be inferred that since it took an expert to fortuitously explain to [the prosecutor] the existence of methanol in the victim's system, it was not through any lack of diligence that [trial counsel] was unaware of this factor."[3]

Even were we to find that the trial counsel's failure to have the medical record interpreted was seriously incompetent behavior, the defendant has failed to show how he was prejudiced thereby. The portion of the medical discharge summary at issue simply revealed that the victim was somewhat intoxicated — a fact that the defendant had already stated to trial counsel. While it is conceivable that evidence

---

[3] We believe that our comments in *Commonwealth* v. *Johnson*, 374 Mass. 453 (1978), apply to counsel's shift in argument between the hearing on the motion for a new trial, and the argument he presents to us on appeal:

"We look askance when counsel who has tried a case, without success, before a judge and jury on one theory of law, then attempts to obtain appellate review on an entirely different theory which was never advanced or suggested at the trial . . . . [Review under G. L. c. 278, § 33E, is not] intended to afford an opportunity, from the vantage point of hindsight, to comb the trial record for interesting questions which could have been, but in fact were not, raised at the trial." *Id.* at 465.

showing the victim to be intoxicated may have bolstered the defendant's implausible story of self-defense, trial counsel did not require the statistics from the discharge summary to place that possibility before the jury. We find nothing to show that the defendant was deprived of an otherwise available, substantial ground of defense. Nothing in the record even suggests that any ground of defense other than his claim of self-defense was available to the defendant. See *Commonwealth* v. *Mains*, 374 Mass. 733, 738 (1978). "[T]he basic trouble from the defense standpoint was weaknesses in the facts rather than any inadequacy of counsel." *Commonwealth* v. *Key*, 381 Mass. 19, 33 (1980), quoting from *Commonwealth* v. *Satterfield*, 373 Mass. 109, 111 (1977). There is no indication that better work by counsel might have accomplished something for the defense. See *Commonwealth* v. *O'Brien*, 380 Mass. 719, 723 (1980).

3. *Instructions as to self-defense.* The defendant argues that the judge erred in failing to expressly instruct the jury that the use of excessive force in self-defense reduces the crime of murder to manslaughter. The argument is not constitutionally based. *Reddick* v. *Commonwealth*, 381 Mass. 398, 407 (1980). Assuming, without deciding, that the evidence warranted such an instruction, the defendant's failure to request the appropriate instruction, or to object specifically to the deficiency now argued as to the judge's charge, precludes appellate review in this case. *Commonwealth* v. *Fluker*, 377 Mass. 123, 131 (1979).

4. *Review under G. L. c. 278, § 33E.* Consistent with our duty under § 33E, we have considered the entire case on the law and the evidence. We find no reason to disturb the ultimate result.

*Judgment affirmed.*

*Denial of motion for
new trial affirmed.*