Commonwealth vs. Edward F. Dalton, Sr.

Plymouth.   October 6, 1981. — February 2, 1982.

Present: Hennessey, C.J., Wilkins, Liacos, Abrams, & Nolan, JJ.

*Homicide.   Practice, Criminal, Capital case, Instructions to jury, Judicial discretion, Assistance of counsel.   Jury and Jurors.   Evidence, Photograph.*

At a murder trial, the judge acted within his discretion in admitting in evidence a photograph of the victim's body, taken in the course of an autopsy, offered to rebut the defendant's original claim that the victim committed suicide.   [192-193]

At a murder trial, the judge committed no error by not instructing the jury on manslaughter, absent evidence that the defendant, an epileptic, killed his wife either during an epileptic seizure or under any other conditions negating malice.   [193]

In the context of the discovery provisions of Mass. R. Crim. P. 30 (c) (4), a trial judge did not abuse his discretion by refusing the defendant's request that he appoint an engineer to examine the tape recordings of an interview of the defendant by the police.   [193-194]

At a defendant's trial for murder of his wife, the judge committed no error in refusing to allow a postverdict interview of a juror on the defendant's claim of prejudice.   [194-195]

At the trial of an indictment for murder, no abuse of discretion appeared in the judge's refusal to appoint an expert to investigate whether the defendant, an epileptic, could have committed the act during an epileptic seizure.   [195]

Failure of counsel, at the trial of an indictment for murder, to object to the introduction in evidence of a photograph or to request that the jury be instructed on manslaughter did not, in the circumstances, deprive the defendant of effective assistance of counsel.   [195]

At the trial of an indictment for murder, the evidence of deliberate premeditation was sufficient for the jury's consideration.   [195-196]

Pursuant to its power to mitigate verdicts under G. L. c. 278, § 33E, this court reduced a defendant's conviction of murder in the first degree to murder in the second degree.   [196-197]

Indictment found and returned in the Superior Court on June 29, 1977.

The case was tried before *Dimond*, J.

*Barry P. Wilson* for the defendant.

*Rosemary Ford*, Assistant District Attorney, for the Commonwealth.

NOLAN, J.  The defendant was found guilty of murder in the first degree.  In this appeal, the defendant argues: (1) that the trial judge committed error when he admitted in evidence a photograph of the victim's body; (2) that the charge to the jury was inadequate for failure to include instructions on manslaughter; (3) that the judge abused his discretion by refusing to appoint experts or investigators with respect to certain tape recordings used at the trial; (4) that a juror may have been biased; (5) that the judge should have appointed an expert to investigate the effects of the defendant's medical condition; (6) that the defendant was inadequately represented by counsel; and (7) that there was insufficient evidence to support a conviction of murder in the first degree and that, consequently, the judge erred in denying the defendant's motion, made at the conclusion of the Commonwealth's evidence, for a directed verdict of not guilty of murder in the first degree.  The defendant requests, finally, that this court reduce his conviction or order a new trial pursuant to our powers under G. L. c. 278, § 33E.

We hold that the judge committed no error and that the defendant was adequately represented.  We conclude, however, that the verdict should be reduced to murder in the second degree pursuant to our powers under § 33E, for reasons which will appear later in this opinion.

The jury could have found the following facts.  On May 23, 1977, at approximately 5 A.M., police and fire department personnel, summoned by the defendant, arrived at the Brockton home of the defendant and his wife, Elizabeth R. Dalton, the victim.  Dalton led the police and emergency squad to the bedroom where they found his wife lying in bed.  She was bleeding from the head.  A .22 caliber rifle was found in the room.  Mrs. Dalton was taken to the hospital and died on May 25, 1977, of a gunshot wound to the head.

The defendant at first claimed that his wife had committed suicide. An autopsy ruled out the possibility of a self-inflicted wound. After the autopsy, the police interviewed the defendant. The defendant said he went to sleep with his wife and was awakened by a loud noise. He saw blood on his wife and found the rifle on the bed between them. At the conclusion of the interview, the defendant was arrested. He repeatedly denied shooting his wife.

Since 1972, the defendant had suffered from epilepsy. Because of his seizures he had been taking dilantin, phenobarbitol, and demerol. The defendant claimed that during some seizures he became violent. He maintained that he had no memory of events on the night in question subsequent to going to bed, until he was awakened by a loud blast and discovered his injured wife.

1. *Photograph.* The defendant challenges the admission of a photograph taken in the course of an autopsy of the victim.[1] We conclude that the judge did not abuse his discretion in admitting it.

The Commonwealth introduced the black and white photograph, which showed the entry wound in the victim's head, to rebut the defendant's original claim that the victim committed suicide. The defendant concedes that the part of the photograph depicting the wound was "arguably relevant" but objects to the part of the photograph showing the victim's upper torso. We have examined the photograph and found it not inflammatory. It was, also, relevant to a material issue. Even if it were inflammatory, "[t]he fact that photographs may be inflammatory does not render them inadmissible if they possess evidential value on a ma-

---

[1] The defendant did not object to the admission of the photograph at trial. He raises the issue here in the context of his constitutional rights to effective assistance of counsel and due process. The issue of the admission of the photograph is not of constitutional dimension and it does not become so by placing its admission in evidence under the umbrella of a claim of ineffective assistance of counsel. In reviewing its admission, we apply the standard appropriate to § 33E, i.e., "whether there was any miscarriage of justice." *Commonwealth* v. *Baker*, 346 Mass. 107, 109 (1963).

terial matter." *Commonwealth* v. *Stewart*, 375 Mass. 308, 385 (1978), and cases cited. Notwithstanding the fact that the photograph depicted the wound after an autopsy, we conclude that the judge acted within his discretion consistent with the guidelines set out in *Commonwealth* v. *Bastarache*, 382 Mass. 86, 105-106 (1980). Cf. *Commonwealth* v. *Allen*, 377 Mass. 674, 679-680 (1979) (photographs of victim's crotch not relevant and possibly prejudicial); *Commonwealth* v. *Richmond*, 371 Mass. 563 (1976) (abuse of discretion to admit photograph of a victim with face mutilated by dogs).

2. *Charge to the jury.* The defendant argues that the judge was required to give instructions to the jury on manslaughter.[2] We disagree.

The defendant theorizes that if a defendant has epilepsy, a judge must instruct a jury that the defendant may have had an epileptic seizure at the time of the killing and that, therefore, he may not have been able deliberately to premeditate or to act with malice aforethought. We recognize that an instruction on manslaughter is required where *any* view of the evidence would support a finding of manslaughter. *Commonwealth* v. *Burke*, 376 Mass. 539, 542 (1978). However, in the circumstances of this case, there was *no* evidence that the defendant killed his wife during a seizure or under any conditions which negate malice. The judge committed no error by not instructing the jury on manslaughter.

3. *Tapes.* The defendant claims that the police or prosecution tampered with the tape recordings of an interview of the defendant by police shortly after the victim's death. He argues that the judge abused his discretion by refusing to appoint, at the Commonwealth's expense, an engineer to examine the tapes and that the judge further abused his discretion by later refusing to allow an engineer to have

---

[2] The defendant did not request a manslaughter instruction. We reach the issue because it was raised in the context of a claim of ineffective assistance of counsel. See note 1, *supra*.

access to the tapes at the defendant's expense. Such access was requested during the presentation of evidence in a hearing on a motion for a new trial. We therefore treat the defendant's request, as did the trial judge, in the context of the discovery provisions of Mass. R. Crim. P. 30 (c) (4), 378 Mass. 900 (1979).

The judge ruled, and we agree, that the defendant's affidavits filed under Mass. R. Crim. P. 30 (c) (3) failed to establish a prima facie case for relief.[3] No evidentiary hearing was necessary on this aspect of the motion for a new trial because no substantial issue was presented to the court. See *Commonwealth* v. *Stewart*, 383 Mass. 253, 257-258 (1981). "Rule 30 (c) (4) of the Massachusetts Rules of Criminal Procedure allows the judge to 'authorize such discovery as is deemed appropriate.' Thus, the extent of discovery allowed is properly left to the judge's discretion." *Id.* at 261. There was neither error nor abuse of discretion.

4. *Impartiality of juror.* The trial judge also denied the defendant's motion for funds for a private investigator to determine the impartiality of one of the jurors.[4] The juror in question was an employee of the same department of the city of Boston as the defendant's brother-in-law and sister-in-law. The judge asked the juror if he had ever heard of

---

[3] The judge ruled that the "charge [of tampering was] entirely speculative, without any probative basis."

In an attempt to justify his allegations, the defendant points to the fact that one tape commenced at 8:35 p.m. and finished at about 9:40 p.m. The tape has only a one-half hour playing time. Thus, argues the defendant, portions of the interview are missing. We are convinced that the judge was warranted in concluding that there was no impropriety on the part of either the police or the prosecution. The lacunae are explained by various phone calls, breaks in the interview, and the offering of time to the defendant to reflect.

[4] While improper influence on a juror will necessitate a new trial, *Commonwealth* v. *Fidler*, 377 Mass. 192, 196-197 (1979), the judge may deny a posttrial interview of a juror if he deems such action consonant with the proper administration of justice. *Id.* at 203. This court recognizes a policy against the impeachment of jury verdicts. *Id.* at 196. See Greaney, Juror Impeachment and Post-Verdict Interrogation of Jurors, 64 Mass. L. Rev. 85 (1979).

the case or had had any contact with any witnesses. The juror's answers to these questions were in the negative. Nothing was presented to the judge with respect to this issue other than the coincidence of employment. Any claim of prejudice under such circumstances is speculative and raises no substantial issue. The judge committed no error in refusing to allow a postverdict interview of the juror.

5. *Defendant's medical condition.* The record is significantly silent as to any evidence that the defendant suffered an epileptic seizure during the incident. Therefore, the judge did not abuse his discretion by refusing to appoint an expert to investigate whether Dalton could have committed the act during an epileptic seizure.

6. *Effective assistance of counsel.* The defendant argues that, by failing to request a manslaughter instruction and by failing to object to the introduction of the photograph, his trial counsel inadequately represented him. In light of our decision on these points, trial counsel did not fall "measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). The trial judge committed no error by not giving a manslaughter instruction or by allowing the introduction of the photograph in evidence. For a defendant to raise successfully a claim of ineffective assistance of counsel, he must show that better work would have accomplished something material for the defense. *Cepulonis* v. *Commonwealth,* 384 Mass. 495, 502 (1981). Dalton has made no such showing here.

7. *Sufficiency of the evidence.* The defendant argues that the Commonwealth produced insufficient evidence to sustain a verdict of murder in the first degree. He claims there was no evidence adduced at trial of deliberate premeditation and that the judge committed error in his denial of the defendant's motion for a directed verdict of not guilty of murder in the first degree.

We place no burden of proof on the defendant when we frame the issue as "whether the evidence, in its light most favorable to the Commonwealth, was sufficient to permit

the jury to infer deliberate premeditation." *Commonwealth v. Blaikie*, 375 Mass. 601, 605 (1978). To prove deliberate premeditation the Commonwealth has to show that the defendant reflected upon his resolution to kill. *Commonwealth v. Soares*, 377 Mass. 461, 469, cert. denied, 444 U.S. 881 (1979). *Commonwealth v. Blaikie, supra* at 605.

We conclude that the evidence of deliberate premeditation was sufficient for the jury's consideration. The victim was shot in the back of the head while apparently lying on her side facing away from the defendant. There was a loaded gun in the bedroom.[5] There was evidence of prior beatings of the victim by the defendant, though the latter attempts to exculpate himself by explaining them in terms of his furnishing masochistic pleasure to his wife. This evidence was sufficient for the jury to find deliberate premeditation. Cf. *Commonwealth v. Blaikie, supra* at 606 (single shot in back of victim's skull lends credence to finding of deliberate premeditation). See *Commonwealth v. Carroll*, 412 Pa. 525 (1963).

8. *Review under § 33E.* While the evidence of premeditation was legally sufficient to put the issue before the jury, it was by no means overwhelming. Under some such circumstances, we have previously reduced verdicts of murder to the second degree pursuant to our power and duty under § 33E. See *Commonwealth v. King*, 374 Mass. 501 (1978); *Commonwealth v. Vanderpool*, 367 Mass. 743 (1975); *Commonwealth v. Williams*, 364 Mass. 145, 151-152 (1973).

We find it useful to compare the facts in this case with those factors found to be influential in prior decisions where verdicts of murder were reduced to a lesser degree of guilt. There are indications which point to a generally good relationship between the defendant and the victim. See *Commonwealth v. Seit*, 373 Mass. 83, 94 (1977); *Commonwealth v. Jones*, 366 Mass. 805, 808 (1975). They had been married thirty-three years. Their family included a grown

---

[5] The defendant protested that he used the gun only for hunting, but it was not equipped with a sight.

daughter and son. Both the defendant and the victim were plagued with poor health. The victim was suffering from an aneurysm which left her unsteady on her feet. Because of this condition she used a quad cane. The defendant was on medication for the treatment of epilepsy. No motive for this killing has surfaced. We may consider the fact that the defendant was a hard worker with no prior criminal record. See *Commonwealth* v. *Vanderpool, supra* at 750. Apart from the presence of the gun in the bedroom, the record does not reveal any plan or scheme for the killing. There is no showing of a quarrel before the victim and defendant retired to bed on the night of the killing.

We recognize that our power to mitigate verdicts under § 33E is to be used sparingly. Nevertheless, we feel that such action is warranted in this case and that a verdict of guilty of murder in the second degree would be "more consonant with justice." *Commonwealth* v. *Baker*, 346 Mass. 107, 109 (1963).

The case is remanded to the Superior Court where the verdict and sentence will be vacated; a verdict of guilty of murder in the second degree will be entered and sentence of "imprisonment in the state prison for life" will be imposed, as provided in G. L. c. 265, § 2.

*So ordered.*