COMMONWEALTH *vs.* EMILE FRATUS, JR.

Bristol.  December 8, 1981. — March 12, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Homicide.  Evidence,* Photograph, Relevancy and materiality.  *Practice, Criminal,* Capital case.

The judge at a murder trial did not abuse his discretion in admitting photographs of the victim's body.  [553]

A defendant convicted of murder in the second degree in the death of a five and one-half month old infant struck "hard" by the defendant on the side of the head was not entitled to entry of a verdict of a lesser degree of guilt under G. L. c. 278, § 33E.  [553-554]

INDICTMENT found and returned in the Superior Court Department on March 19, 1980.

The case was tried before *Prince,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Phillip L. Weiner,* Assistant District Attorney, for the Commonwealth.

*Kenneth L. Sullivan,* for the defendant, submitted a brief.

ABRAMS, J.  On July 21, 1977, the defendant fatally struck Shawn Gillett, an infant approximately five and one-half months old.  In 1980,[1] after trial by jury, the defendant was convicted of murder in the second degree on an indict-

---

[1] At the time of Shawn's death, the mother was interviewed by a police officer but she did not tell him that the defendant had struck Shawn.  The mother separated from the defendant in May, 1979.  It was not until March, 1980, after the mother began divorce proceedings against the defendant, that she revealed to the police and to the district attorney's office that the defendant had struck Shawn on July 21, 1977.  Thereafter, a grand jury indicted the defendant for murder.

ment charging murder (comprehending murder in the first degree). In accordance with *Commonwealth* v. *Davis*, 380 Mass. 1, 16-17 (1980), we transferred his appeal to this court on our own motion. Fratus argues error in the admission of photographs. He also asks that we exercise our power under G. L. c. 278, § 33E, to direct the entry of a verdict of guilty of manslaughter. We affirm the conviction. We conclude that there is no reason for us to exercise our power under G. L. c. 278, § 33E, to direct the entry of a finding of a lesser degree of guilt or to grant a new trial.

We summarize the evidence. Shawn Gillett was born on January 30, 1977. A pediatrician saw Shawn on March 31, 1977, and May 25, 1977, and on each visit, the baby appeared to be healthy and within normal bounds. The doctor did not observe any bruises. On May 25, 1977, the baby's mother married the defendant and moved into an apartment with the defendant and the baby.

On July 21, 1977, in the early evening, the defendant pushed Shawn's chair to the floor while the baby was seated in it. At approximately 9 P.M., the baby began to cry while in his crib in the bedroom. The defendant and Shawn's mother were watching television in the living room. The defendant rushed into the bedroom, lifted Shawn from the crib and struck him "hard" on the side of the head.[2] The baby fell back and struck the other side of his head on the crib. The mother and the defendant left the room. The mother returned to the room a few minutes later. She observed that the child was not breathing and called the defendant.

The defendant tried to resuscitate the baby but was unable to revive him. The defendant instructed the mother to call an ambulance and to say that the baby "fell off the bed." An ambulance arrived and took Shawn and his mother to the hospital. The defendant did not accompany the baby and his wife. A neighbor observed the defendant

---

[2] Shawn's mother said the defendant "hit [Shawn] about as hard as he would hit me." A neighbor heard an argument and "a slap" that evening.

running down the street in the opposite direction from the ambulance.

At the hospital, doctors noticed a number of bruises on Shawn's body, and summoned the police. When an officer arrived, Shawn's mother told him that Shawn "fell off the bed." The officer observed bruises on the victim's mother, as well as on Shawn. He inquired about the mother's bruises. She told the officer her husband had bruised her "fooling around," and that he "plays rough." Photographs were taken of the mother's bruises, as well as of Shawn.[3] Later that evening, the officer interviewed the defendant, who also told him that the baby had fallen off the bed.

Aside from the fatal injury, the medical examiners found at least ten bruises on Shawn's face, eight bruises on his chest, one on his right leg, one on his left elbow, and one on his back. These bruises were different sizes and varied in age; some were recent and some were up to three weeks old. These bruises were not fatal. The cause of Shawn's death was a blunt force injury to the head. The force necessary to cause the fatal injury was severe and "not consistent with a fall from a bed."

The defendant claims error in the admission of two photographs of Shawn as they "had no evidentiary value, and were unnecessarily inflammatory and prejudicial to the defendant." The photographs were relevant on the cause of death and on the issue of malice. "The fact that photographs may be inflammatory does not render them inadmissible if they possess evidential value on a material matter." Commonwealth v. Stewart, 375 Mass. 380, 385 (1978), and cases cited.

The defendant claims the evidence did not warrant a finding of murder in the second degree, and pursuant to G. L. c. 278, § 33E, he asks us to reduce the verdict to manslaughter.[4] Our power under G. L. c. 278, § 33E, is to be

---

[3] The officer also took photographs showing the distance of the bed from the floor. The distance was twenty-eight inches.

[4] The defendant did not file a request for a required finding of not guilty to so much of the indictment as charged murder.

used with restraint. *Commonwealth* v. *MacDonald,* 371 Mass. 600, 604 (1976).

The defendant claims that, at most, the Commonwealth's evidence proves the defendant acted "as a result of uncontrolled anger," see *Commonwealth* v. *Ransom,* 358 Mass. 580, 583 (1971), and "indicates the use of excessive force with the element of malice missing." He therefore concludes that we should order a reduction of the jury's verdict from murder in the second degree to involuntary manslaughter. We do not agree.

"'[A] simple blow with the hand administered to a healthy adult' will not support a finding of malice aforethought, since there is no 'plain and strong likelihood that death will follow.' *Commonwealth* v. *Mahnke,* 368 Mass. 662, 702-703 & n.48 (1975), and cases cited, cert. denied, 425 U.S. 959 (1976). 'But the inference would be quite different if the same assault and battery were committed on an infant of tender years'; in such a case 'a slight blow on the head of a new-born infant, which, if inflicted on an adult, would be harmless, but which necessarily would endanger the life and actually caused the death of the child, is proof upon which a jury might well find a party guilty of murder.' *Commonwealth* v. *Fox,* 7 Gray 585, 588 (1856). Cf. *Commonwealth* v. *Hicks,* 356 Mass. 442, 445 (1969) (adult kicked in stomach). The jury could find that according to common experience there was a plain and strong likelihood that death would follow the defendant's blow, and could infer that he foresaw serious injury." *Commonwealth* v. *Starling,* 382 Mass. 423, 426 (1981).

We see no material difference between the facts of this case and the facts of *Commonwealth* v. *Starling, supra.* The defendant brutally struck a helpless infant. In such circumstances "there is no question of reducing the verdict below murder." *Commonwealth* v. *Cadwell,* 374 Mass. 308, 316 (1978).

*Judgment affirmed.*