COMMONWEALTH *vs.* STANLEY R. DUTRA, SECOND
(and five companion cases[1]).

Barnstable. February 11, 1983. — March 29, 1983.

Present: BROWN, KAPLAN, & GREANEY, JJ.

*Practice, Criminal,* Continuance, Assistance of counsel, Severance. *Evidence,* Photograph, Relevancy and materiality, Redirect examination, Other offense. *Identification. Rape.*

The judge in a criminal case did not abuse his discretion in denying the defendant's motion for a continuance so that the defendant, who was represented by appointed counsel, could retain private counsel where the motion was made for the first time on the day scheduled for trial, where the defendant's procurement of private counsel depended on the receipt of financial aid from his mother, who was hospitalized and of limited financial means, where the defendant's appointed counsel was prepared to try the case, and where the Commonwealth had made arrangements to have a witness flown from Arizona to testify at the trial. [545-546]

At the trial of indictments charging aggravated rape, sodomy, and assault and battery, there was no error in the admission in evidence of photographs taken the day after the incident and showing cuts and bruises on the victim's body. [546]

The cumulative effect of certain asserted failures of defense counsel at a rape trial did not amount to ineffective assistance of counsel. [546] BROWN, J., concurring in the result.

The decision of defense counsel in a rape trial not to file a pretrial motion to suppress the victim's out-of-court identification of the defendant was not ineffective assistance of counsel where the victim had had ample opportunity to observe her assailant, where she positively identified the defendant and where the defense was based on a theory of consent. [547-548]

Failure of defense counsel at a rape trial to file a motion for a required finding of not guilty did not constitute ineffective assistance of counsel where the motion would have been unavailing in view of the evidence in the Commonwealth's case. [548]

[1] Two of the companion cases are against Dutra, and three companion cases are against Sebren M. Shagoury.

Because a theory of joint venture formed the basis of the Commonwealth's proof in a rape case, counsel for one of two defendants could reasonably decide that a motion to sever that defendant's trial from that of the second had little chance of being allowed. [548-549]

In the circumstances, failure by defense counsel at a rape trial to object when the prosecutor, on redirect examination of the victim, was allowed to elicit certain testimony was a reasonable tactical decision. [549-550]

In evaluating the effectiveness of cross-examination of government witnesses and of closing argument by counsel for a defendant in a rape trial, this court considered that the testimony of several witnesses could neither aid nor hinder the defense in light of the defendant's reliance on consent as a defense, and that in cross-examination and closing argument the defendant's counsel followed counsel for a second defendant who was engaged in developing an identical defense. [550-551]

INDICTMENTS found and returned in the Superior Court Department on January 6, 1981.

The cases were tried before *Linscott*, J.

*John E. Warren* for Stanley R. Dutra, II.

*Severlin B. Singleton, III*, for Sebren M. Shagoury.

*Paul W. Shaw*, Special Assistant Attorney General, for the Commonwealth.

GREANEY, J. Stanley R. Dutra, II, and Sebren M. Shagoury, were convicted after a joint trial before a jury in the Superior Court of aggravated rape (G. L. c. 265, § 22[a]), sodomy (G. L. c. 272, § 34), and assault and battery (G. L. c. 265, § 13A). Dutra was sentenced to a thirty-five- to forty-year State prison term on the rape indictment and a concurrent term of years on the sodomy conviction. A sentence of life imprisonment was imposed on Shagoury on the rape charge and a concurrent term of years on the sodomy charge. The assault convictions of both defendants were filed with their consent and are therefore not before us. See *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1975). In this appeal, Dutra claims that the trial judge erred by denying him a continuance on the day of trial and by admitting photographs depicting the victim's injuries.

Shagoury claims that he was denied his constitutional right to effective assistance of trial counsel.

The jury heard evidence from which they could have found the following facts. At approximately 1:15 A.M. on November 2, 1980, the victim began walking home from downtown Provincetown, a distance of about one-third of a mile, after having dinner and visiting a bar with some friends. On her way, she met a friend with whom she spoke briefly in front of a pizza shop. She then continued on her way alone, and the friend lost sight of her. As she approached the vicinity of her home, the victim became aware of two men some distance behind her. Turning a corner, she heard a noise, "had a sensation of being totally stunned," and then became aware that she was being beaten about the head by more than one person. She was dragged to a parking lot which was nearly adjacent to her home, where two men disarranged her clothing and she was forced to submit to acts of vaginal, oral and anal intercourse for a period of approximately two hours. When the victim began to convulse from the effects of her exposure to the windy, forty-degree weather, the men took her to an unlocked van parked nearby in which they forced her to perform similar acts for another two hours. The men elicited a promise from the victim not to talk to the police, made vague references to meeting her again and left at approximately 5:20 A.M. The victim identified the defendants as her assailants some six hours later.

Both defendants proceeded on a theory of consent. Dutra testified that he first observed the victim as she was talking to Shagoury near the pizza shop at about 1:30 A.M. He said he walked with the victim and Shagoury, who were holding hands and talking, until they reached the parking lot, at which point he left as the victim and Shagoury began kissing. He testified that he returned to the site some forty-five minutes later, to find Shagoury and the victim leaving the parking lot and entering the van. He said that he again left the scene for about ten minutes, returned, entered the van and observed the victim and Shagoury engaging in inter-

course. He testified that after a period of time the victim began making sexual overtures to him and they subsequently performed consensual sexual acts. Shagoury did not testify.

1. On the day of trial, April 14, 1981, Dutra, who had been found indigent and was represented by appointed counsel, Mass.R.Crim.P. 8(b), 378 Mass. 857 (1979), made, both through his attorney in a lobby conference and personally in open court, an oral motion for a continuance in order to retain private counsel. A conference had been held on the case on March 26, 1981, and April 14 had been chosen as the trial date. There is no record of any prior motion for a continuance. Dutra's court-appointed counsel stated that Dutra, about ten days prior to April 14, had mentioned that he was "thinking about [retaining] private counsel but that he [Dutra] had not made any attempt to do so." Dutra himself indicated only that he was "checking into" a lawyer to whom he had been referred. It appears that no lawyer had been approached, and that his procurement of private counsel depended almost wholly on the receipt of financial aid from his mother who was, at the time, hospitalized on the west coast and of limited financial means. Counsel appointed for Dutra (who also represents him on this appeal) was prepared to try the case. Dutra expressed no dissatisfaction with his counsel's representation. The Commonwealth was also ready with its proof and had made arrangements to have a physician who examined the victim flown back from Arizona to testify on April 16, 1981. By-passing the obviously serious defects in the form of the motion, see Mass.R.Crim.P. 13(a) & (d), 378 Mass. 871, 873 (1979); Rule 9 of the Superior Court, as amended effective September 1, 1980, we think the decision to deny the last-minute request for a continuance did not necessarily bespeak insensitivity to Dutra's right to be represented by counsel of his choice, and in the circumstances described, was within the discretion given trial judges on this subject. See *Lamoureux* v. *Commonwealth*, 353 Mass. 556, 560 (1968); *Commonwealth* v. *Scott*, 360 Mass. 695, 701 (1971); *Commonwealth* v. *Cavanaugh*, 371 Mass. 46, 50-51 (1976);

*Commonwealth* v. *Perry*, 6 Mass. App. Ct. 531, 539 (1978); *Commonwealth* v. *Nero*, 14 Mass. App. Ct. 714, 719 (1982). See also Mass.R.Crim.P. 10(a), 378 Mass. 861 (1979).

2. Photographs showing cuts and bruises on the victim's body were put in evidence. The series of photos was taken by a Provincetown policewoman the day after the incident. Dutra argues that the photographs were not properly authenticated and should have been excluded as prejudicial.

Verification that the injuries depicted in the photographs had been inflicted on the victim during the four-hour period in which she was repeatedly raped and assaulted was implicit in the victim's testimony of her mistreatment and the resulting injuries, which was corroborated by the testimony of the examining physician. The judge could have found that the photographs might aid the jury in understanding the nature of the victim's injuries, see *Commonwealth* v. *Retkovitz*, 222 Mass. 245, 248 (1915); in considering the medical testimony, see *Commonwealth* v. *Lee*, 324 Mass. 714, 718-719 (1949); in evaluating the question of "serious bodily injury" in connection with the indictment charging aggravated rape under G. L. c. 265, § 22(*a*), and in assessing the claims that the victim consented to have sex. That the photographs might have some tendency to inflame the jury did not require their exclusion. That consideration did not control once the judge determined, in his discretion, that they had evidentiary value on a material matter. The trial judge committed no error by admitting the photographs. See *Commonwealth* v. *Lamoureux*, 348 Mass. 390, 392-393 (1965); *Commonwealth* v. *Clifford*, 374 Mass. 293, 305-306 (1978); *Commonwealth* v. *Stewart*, 375 Mass. 380, 385 (1978); *Commonwealth* v. *Fratus*, 385 Mass. 551, 553 (1982); *Commonwealth* v. *Westmoreland*, 388 Mass. 269, 279 (1983).

3. Shagoury, represented by new counsel on appeal, has asserted numerous failures of trial counsel which he claims cumulatively amount to ineffective assistance. We think the perceived failures can be assessed adequately on the

basis of the record at trial, see generally *Commonwealth* v. *LeBlanc*, 11 Mass. App. Ct. 960, 962-963 (1981); contrast *Commonwealth* v. *Porter*, 9 Mass. App. Ct. 908 (1980), in light of the standards governing claims of ineffective assistance set forth in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), *Commonwealth* v. *Rondeau*, 378 Mass. 408, 413 (1979), *Commonwealth* v. *Mercado*, 383 Mass. 520, 527 (1981), and *Commonwealth* v. *Dalton*, 385 Mass. 190, 195 (1982).

a. The manner in which trial counsel introduced himself to the jury venire (giving his name, stating he represented Shagoury and identifying himself as "a public defender on the Cape") was indifferent and did not constitute ineffective assistance.

b. There was nothing unreasonable about trial counsel's decision not to object to the denial of a continuance on the basis of an article in the April 12, 1981, edition of the Cape Cod Times in light of the trial judge's stated willingness (subsequently acted upon) to conduct a voir dire of the jury venire on their exposure to the article.

c. The claim that the failure of counsel to request a voir dire of the jurors concerning racial bias prejudiced Shagoury is speculative and raises no substantial issue for the reasons discussed in *Commonwealth* v. *Moffett*, 383 Mass. 201, 214-215 (1981). We note the trial judge's observation that he was unable to tell by looking at them whether either defendant was black. See also *Commonwealth* v. *Dalton*, *supra* at 194-195.

d. The decision not to file a pretrial motion to suppress the victim's out-of-court identification of Shagoury is not, in context, indicative of inadequate counsel. See *Commonwealth* v. *Drayton*, 386 Mass. 39, 42 (1982); *Commonwealth* v. *LeBlanc*, *supra* at 963, and cases cited. The victim spent approximately four hours in the presence of her assailants and shortly after her release provided the police with exceptionally detailed descriptions of both men. Shagoury was positively identified by the victim a few hours after the incident when the defendants agreed to go to the

victim's home with the police. The procedure followed was permissible under the principles discussed in cases such as *Commonwealth* v. *Storey*, 378 Mass. 312, 317-319 (1979), cert. denied, 446 U.S. 955 (1980), and *Commonwealth* v. *Bowden*, 379 Mass. 472, 479 (1980). In view of the circumstances of the identification, Shagoury's trial counsel could have properly decided that there was no demonstrable defect in the identification process and that a motion to suppress stood no chance of success. See *Commonwealth* v. *Conceicao*, 388 Mass. 255, 264 (1983). Such a decision would have been entirely consistent with the theory of consent on which Shagoury ultimately based his defense.

e. In view of the victim's testimony and the other evidence in the Commonwealth's case, Shagoury's trial counsel could have decided that the filing of a motion for a required finding of not guilty on the rape and assault indictments under Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979), would have been unavailing. Such a decision would have been reasonable. It cannot escape attention that trial counsel did file a motion under rule 25(a) on the sodomy indictment and that he argued that motion vigorously on the premise that there was no evidence that the victim had been sodomized by Shagoury.

f. Because of the joint venture theory which formed the basis of the Commonwealth's proof, trial counsel could also have decided, in light of cases such as *Commonwealth* v. *Stetson*, 384 Mass. 545, 556-557 (1981), *Commonwealth* v. *Hogan*, 7 Mass. App. Ct. 236, 255 (1979), *S.C.*, 379 Mass. 190 (1979), and *Commonwealth* v. *Ciminera*, 11 Mass. App. Ct. 101, 106, *S.C.*, 384 Mass. 807 (1981), that a motion to sever Shagoury's trial from Dutra's had little chance of being allowed. There was nothing which would constitutionally compel a severance and the fact that Dutra intended to take the stand while Shagoury did not would not require separate trials. See *Commonwealth* v. *Murphy*, 6 Mass. App. Ct. 335, 340-341 (1978). See also *Commonwealth* v. *Horton*, 376 Mass. 380, 390-391 (1978), cert. denied, 440 U.S. 923 (1979). Furthermore, the defendants

pursued a common defense.  Compare *Commonwealth* v. *Moran*, 387 Mass. 644, 658-659 (1982).

g.  Shagoury asserts that it was incompetent of his trial counsel to fail to object to evidence of what the victim had read in a certain article appearing in the Provincetown Advocate of November 13, 1980.  Shagoury's attorney had elicited on cross-examination of the victim that she had consulted with an attorney, who was present in court, for the purpose of bringing a civil suit against the county in connection with the criminal case.  On redirect, the assistant attorney general who prosecuted the case was permitted to elicit from the victim the assertion that the idea of bringing suit occurred to her upon reading the article.  She explained that the article indicated that the defendants had been put up in a Provincetown hotel at the expense of the district attorney because they were witnesses in an upcoming murder trial, and "that because of a communications breakdown the local police had been notified of their presence there but had not been notified of . . . any prior criminal history which they may have had and, because of these circumstances, I felt that [I had been the victim of] a certain negligence . . . on the part of public officials . . . ." Shagoury now asserts that this testimony should have been objected to as hearsay and because it amounted to evidence of bad character where the defendant had not made character or reputation an issue.

The evidence of the civil suit was unquestionably relevant to the issue of the victim's credibility, inasmuch as it indicated that a guilty verdict in the criminal case might aid her recovery in the civil matter.  The thrust and parry of this evidence had been preceded by a voir dire exchange among the judge, the prosecutor and the defense attorneys, in which Shagoury's attorney represented that he intended to drop the matter after eliciting the information that the victim was involved in preparing the related civil suit.  The judge stated that if the question which would prompt this information was asked, he would allow the prosecutor to "ask what [he] want[ed] on redirect on this subject."  In

light of this statement of the judge, and the general rule that "witnesses should have the opportunity to explain on redirect why they did or did not do certain things which were the subject of questioning on cross-examination," *Commonwealth* v. *Dougan*, 377 Mass. 303, 309 (1979), Shagoury's attorney reasonably could have concluded that an objection to the victim's testimony on redirect would have been futile. Since the judge had expressly laid out in advance his determination that the victim would be allowed to explain, on redirect, statements she would make on cross-examination about the civil suit, the decision to proceed with that line of questioning appears to represent a tactical judgment by Shagoury's counsel that the effect of the information on the victim's credibility would be worth the risk of exposing her rationale for the suit in redirect. We cannot say, exercising hindsight, that such a tactical choice was manifestly unreasonable. We add that the victim's choice of words (the police "had not been notified of . . . any prior criminal history which they may have had") attributed no specific bad acts to either defendant and was in all probability the least damning way in which she could have explained the information which led her to consider the civil suit. Since the information was offered for the purpose of explaining the victim's thought processes in connection with the civil suit, rather than for the purpose of showing prior bad acts, it was not hearsay. Although a cautionary instruction as to the limited purpose for which the evidence was offered would have been appropriate (the judge indicated an intention to give such an instruction, but did not, in fact, do so), we think any error in its omission was not substantial and prejudicial in light of the considerable evidence of Shagoury's guilt. See *Commonwealth* v. *Williams*, 378 Mass. 217, 239 (1979). See also *Commonwealth* v. *Alexander*, 2 Mass. App. Ct. 911, 912 (1975).

h. Shagoury suggests that his counsel was ineffective in cross-examination of government witnesses. We note, as does counsel on appeal, that the testimony of several witnesses displayed an "apparent inability to aid or hinder the

defense," especially in light of Shagoury's reliance on consent as a defense. See *Commonwealth* v. *Key*, 381 Mass. 19, 32 (1980). It is also significant that Shagoury's counsel at all times followed Dutra's counsel in cross-examination and that Dutra's attorney was competently engaged in developing an identical defense. Shagoury's attorney appears to have resisted the temptation to rehearse the testimony brought out in cross-examination by Dutra's counsel. Our review of the trial transcript indicates a competent pursuit in cross-examination of issues bearing on consent by both counsel and a tactically reasonable decision not to emphasize matters of identification and the defendants' movements on the day of the incident.

i. Shagoury's attorney also followed Dutra's counsel in making closing argument and told the jury that he would not repeat the evidence which had just been highlighted from the defendants' perspective. We can find no fault in this approach. Counsel concentrated on the issue of the victim's credibility, and pointed to portions of the victim's testimony which he suggested were consistent with consent. On the record as a whole, counsel's summation was competent.

j. The failure of counsel to object to what appears to have been a minor slip by the prosecutor in recounting the evidence of identification (an issue not contested by the parties) in his summation does not give rise to the need for a new trial. See *Commonwealth* v. *Williams, supra.*

k. We see no indication of ineffectiveness in trial counsel's failure to request jury instructions. Counsel for Shagoury on appeal neither identifies any instructions that should have been requested nor points to anything in the judge's charge which appears to be erroneous.

Summing up, many of the claims of ineffective assistance lack merit while several others involve suggestions that counsel should have made motions which any reasonable lawyer would recognize as doomed to failure from the start. Both defendants faced a very strong Commonwealth case, and Shagoury's appellate counsel has not shown how better

work would have accomplished a different result. See *Cepulonis* v. *Commonwealth*, 384 Mass. 495, 502 (1981), appeal dismissed, 455 U.S. 931 (1982). After a survey of the whole case, we conclude that Shagoury's defense was not botched and that his trial counsel's performance was competent.

*Judgments affirmed.*

BROWN, J. (concurring in the result). I fully agree with the reasoning and result reached with respect to Dutra's claims of error. There is doubt in my mind, however, whether Shagoury's trial counsel was well prepared and exercised sound tactical judgment throughout the proceedings below. Shagoury's counsel chose to ride the coattails of Dutra's counsel from beginning to end; he attempted no fine-tuning and made no midcourse corrections. I concur, albeit reluctantly, because in view of the "weaknesses in the facts" (*Commonwealth* v. *Satterfield*, 373 Mass. 109, 111 [1977]) better lawyering could not possibly have produced a more favorable result. *Id.* at 115. This case does, however, come close to the situation "where the defense was so botched that judgments on that hypothetical question [i.e., whether better work might have accomplished something material for the defense] would be without value." *Id.* A note of caution should be added — defenses that are not foredoomed are entitled to as vigorous a pursuit as is feasible in the circumstances.