## COMMONWEALTH vs. DONALD STEWART.

Suffolk.  September 9, 1986. — November 10, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Homicide. Practice, Criminal,* Required finding, Instructions to jury, Failure to make objection, Capital case. *Evidence,* Relevancy and materiality, Illustrative exhibit, Expert opinion, Hearsay, Consciousness of guilt.

At the trial of a murder case, there was sufficient evidence of deliberate premeditation, including evidence that the defendant brought a gun with him to the scene of a planned robbery, to warrant the defendant's conviction of murder in the first degree. [539-541]

At a murder trial taking place some eight years after the homicide in question, there was no abuse of discretion in admitting in evidence for illustrative purposes a gun identical to the murder weapon, which had been disposed of by court order, nor was there error in the judge's failure at the close of the case to repeat his instructions that the weapon admitted in evidence was not the actual weapon used in the commission of the crimes in question. [541-542]

At the trial of a murder case, the judge did not err in admitting in evidence testimony by a ballistics expert based solely on his eight-year-old work sheet, which was also used by defense counsel in cross-examining the expert, but which was not introduced in evidence. [542-543]

In reviewing the record of a first-degree murder case pursuant to G. L. c. 278, § 33E, this court declined to disturb the jury's verdict despite the defendant's contentions that the evidence of premeditation was not overwhelming; that, although the judge may have believed the defendant to have been a heroin addict at the time of the murder, the judge failed to instruct the jury on his own initiative respecting voluntary intoxication as a factor in determining the defendant's degree of guilt; that the judge erred in his instructions respecting consciousness of guilt and the degrees of murder; and that the judge's instructions left an impression that the jury's only options were to find the defendant guilty of murder in the first degree, or not guilty. [543-549]

INDICTMENT found and returned in the Superior Court on February 25, 1977.

The case was tried before *Herbert F. Travers, Jr.*, J.

*James M. Smith* for the defendant.

*James M. McDonough,* Assistant District Attorney (*Leonard J. Henson,* Assistant District Attorney, with him) for the Commonwealth.

LIAÇOS, J. The defendant, Donald Stewart, was indicted on February 25, 1977, for the murder of Ronald Allen; for assault and battery by means of a dangerous weapon on Gregory Smith; for assault and battery on Sharon Waddie; for unlawfully carrying a firearm on his person; for entering a dwelling house armed and making an assault with intent to commit a felony; for three counts of assault with intent to rob while armed; and for armed robbery of Dolores Smith. On April 26, 1985, more than eight years after indictment, a jury found Stewart guilty of murder in the first degree, and he was sentenced to life imprisonment at the Massachusetts Correctional Institution at Cedar Junction.[1]

The evidence admitted would warrant the jury's finding the following facts. In February, 1977, Dolores Smith lived with her three teenaged daughters (Karyn, Stacy, and Lisa) and her two adult sons (Edward and Gregory) in apartment no. 908, 7 Montpelier Road, Dorchester. Gregory Smith, then aged twenty, and his mother had been selling heroin from the apartment. On the evening of February 6, 1977, two friends of Dolores Smith — Sharon Waddie and the murder victim, Ronald Allen — were visiting at apartment no. 908. At 11:15 P.M., there was a knock on the door. Gregory Smith answered

---

[1] The jury also convicted Stewart on the remaining charges, except that it acquitted him of armed robbery and of all three counts of armed assault with intent to rob. On his conviction for entering a dwelling place armed and making an assault with felonious intent, Stewart was sentenced to a concurrent term of ten to twenty years; for assault and battery by means of a dangerous weapon and unlawfully carrying a firearm, he was sentenced to concurrent terms of four to five years each.

The indictment charging Stewart with assault and battery, on which the jury returned a verdict of guilty, was filed by the court with the defendant's assent.

All of the charges against Stewart arose from a single incident. The appeals of two other defendants were addressed in *Commonwealth* v. *Funches,* 379 Mass. 283 (1979).

On appeal, the defendant argues error as to the murder conviction only.

it, finding Sheila Funches and Gloria Jordan, who said they wanted to buy heroin. After opening the door, Gregory saw two armed men running down the hall toward him. He tried to close the door, but Funches and Jordan prevented him, allowing the two men to force their way past Gregory and into the apartment. Gregory recognized one of the men as Stewart. Stewart carried a pearl-handled .25 caliber semi-automatic pistol with which he hit the struggling Smith "up the side of the head." The other man was later identified by Gregory and others as Robert Thomas.[2] Thomas carried a sawed-off shotgun.

The noise of this scuffle brought Waddie to the doorway. Stewart took her by the hair and pushed her toward the kitchen. Stewart permitted her to return to a bedroom after she said, "Please let me go." Dolores Smith then emerged from another bedroom. Thomas pushed her to the floor, put his shotgun to her head, and said, "Where is the money and the dope, bitch?" Dolores said she had none. At this point, Allen entered the kitchen. He said to Stewart, "Man, why are you doing this? We all grew up together." Stewart said, "Shut up." Then Stewart shot Allen in the head.[3] Allen fell to the floor; Stewart stepped over him and began searching the bedroom. He and Thomas then left taking $30 in cash and two twenty-dollar bags of heroin.

About fifteen minutes after the shooting, one of the surviving victims telephoned the police. The responding officers were told by several of the victims that the killer was a man they knew as Stewart.[4] Officers Ralph Regan and Francis M.

---

[2] "Thomas was apprehended the night of the shooting. He was brought to trial with Funches and Jordan, and pleaded guilty to murder in the second degree and lesser felonies soon after the trial began. He was sentenced to life imprisonment at the Massachusetts Correctional Institution at Walpole." Commonwealth v. Funches, supra at 285 n.2. Funches and Jordan both were convicted of murder in the second degree, id. at 284-285, but this court reversed both convictions on evidentiary grounds.

[3] The wound was a fatal one.

[4] When first interviewed by police officers, the victims did not identify Thomas by name, because none had recognized him on sight. Rather, the victims identified Thomas by picking his photograph from an array presented to them by police officers. No photographs were employed by police officers to confirm the identification of Stewart.

McDonough were dispatched to set up a roadblock near the Bayside Mall in Dorchester. Neither officer knew Stewart by sight, but the victims had given them his name and his description. The fourth vehicle they stopped was a taxicab headed away from the scene of the crime. Its lone passenger was a man who fit the killer's description. Officer Regan asked this man to get out of the cab, and the man complied. Regan frisked him but found nothing. Regan then saw a pearl-handled pistol on the floor of the back of the cab. As Regan reached in to retrieve the gun, the passenger fled and escaped. Officers who knew Stewart testified that, although he had often been seen around the Columbia Point housing project prior to that night's shooting, he was nowhere to be found in the weeks and months that followed. A warrant issued, but Stewart remained at large for seven years. He was arrested in October, 1984, in Cleveland, Ohio.

As to the eyewitness accounts, both Dolores Smith and Sharon Waddie testified that they had known Stewart as an occasional resident of the Columbia Point housing project for many years prior to the shooting, and that they had recognized him instantly as their assailant. Gregory Smith and Stacy Smith testified that they had known Stewart only by name prior to seeing him shoot Ronald Allen; and Karyn Smith testified that she recognized a voice she heard in her mother's apartment that night as the voice of a man she knew by sight as Stewart. All of these witnesses also identified the defendant in court as the man who had murdered Ronald Allen.

William J. Murphy, a retired police officer and former chief ballistician for the Boston police department, testified over the defendant's objection that the bullet which killed Allen was fired from the gun found by Officer Regan on the floor of the taxicab. The actual murder weapon was not introduced because it was destroyed by court order in 1981, two years after the appeals of Funches and Jordan had run their course and four years before Stewart's arrest. However, the judge did permit the Commonwealth to introduce, again over the defendant's objection, a weapon of the same make and model as the .25 caliber semi-automatic pistol that was used in the murder. The

unspent bullets found inside the murder weapon, together with a spent shell casing found on the floor of Dolores Smith's kitchen and the slug taken from Allen's head, were likewise unavailable to be introduced in evidence — not, however, due to design but because a "diligent search" by the clerk of the Suffolk County Superior Court, in whose custody these items had been placed, failed to locate them.

At his trial, Stewart introduced no evidence and did not testify in his own behalf. On appeal, Stewart argues that (1) the trial judge erred in denying his motion for a required finding of not guilty because there was insufficient evidence of deliberate premeditation to support a verdict of murder in the first degree; (2) the judge erred when he admitted in evidence a gun similar to the murder weapon and also that he erred when he failed in his instructions (despite the lack of any request from defense counsel) to remind the jury that the actual weapon was not in evidence; (3) the judge erred in admitting the ballistician's testimony because the ballistician had no opportunity to review the physical ballistic evidence immediately before trial, with the result that his testimony was based solely on his eight-year-old work sheet; (4) the judge erred in his instructions to the jury (a) by charging inadequately as to consciousness of guilt, and (b) by muddying the distinctions between the degrees of murder. He further argues that this court should exercise its power under G. L. c. 278, § 33E (1984 ed.), to grant a new trial or to direct the entry of a verdict of a lesser degree of guilt because (1) the evidence of premeditation was less than "overwhelming"; (2) the judge considered Stewart to have been a heroin addict at the time these crimes were committed, but he failed sua sponte to instruct the jury on voluntary intoxication as a factor which could reduce the defendant's degree of guilt; (3) Stewart, while at large, had rehabilitated himself substantially; and (4) the judge's instructions left an impression that the jury's only options were to find Stewart guilty of murder in the first degree, or not guilty.

1. *Questions appealed as of right.* A. *Sufficiency of the evidence of premeditation.* The defendant argues that the judge erred when denying his motion for a required finding of not

guilty because there was insufficient evidence of deliberate premeditation.[5] "In reviewing the denial of a motion for a directed verdict in a criminal case, we determine whether the evidence offered by the Commonwealth, together with reasonable inferences therefrom, when viewed in its light most favorable to the Commonwealth, was sufficient to persuade a rational jury beyond a reasonable doubt of the existence of every element of the crime charged." *Commonwealth* v. *Campbell,* 378 Mass. 680, 686 (1979). See *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979); *Jackson* v. *Virginia,* 443 U.S. 307, 318-319 (1979).

To prove deliberate premeditation, "the Commonwealth must show that the defendant's resolution to kill was a product

---

[5] The defendant renewed his motion for a required finding of not guilty after the jury's verdict. Mass. R. Crim. P. 25 (b), 378 Mass. 896 (1979). On appeal, he argues only the insufficiency of the evidence as to the element of deliberate premeditation. Thus, we consider this issue only. Mass. R. App. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

At oral argument, the Commonwealth argued that the defendant's conviction of murder in the first degree may stand, even if we were to rule that there was insufficient evidence of deliberate premeditation. The charge of murder in the first degree was submitted to the jury on alternate grounds: (a) that Stewart killed with "deliberately premeditated malice aforethought," or (b) that he killed Allen during "the commission or attempted commission of a crime punishable with . . . imprisonment for life," either of which ground, the Commonwealth says, provides a sufficient basis for a finding of murder in the first degree. See G. L. c. 265, § 1 (1984 ed.). Although the jury did not state the ground(s) on which it relied in finding Stewart guilty of murder in the first degree, it expressly convicted him of a crime punishable by a life sentence, namely, entering a dwelling place armed and making an assault with intent to commit a felony (robbery). See G. L. c. 265, § 18A (1984 ed.). In his charge on the degrees of murder, the judge instructed that a verdict of murder in the first degree would flow from a finding either of premeditation or of commission, or attempted commission, of a crime punishable by life imprisonment. The judge then emphasized that armed robbery is an offense punishable by life imprisonment, but did not mention that armed entry of a dwelling with intent to commit a felony is similarly punishable. Thus, as submitted to the jury, murder in the first degree could be found only after a finding of premeditation, or a finding of guilty as to armed robbery, or both. Stewart, however, was acquitted of armed robbery. At no place in his instructions did the judge inform the jury that "armed entry" is also punishable by life imprisonment. Thus, the conviction of murder in the first degree must stand, or fall, on the basis of evidence sufficient to warrant a finding of deliberate premeditation.

of cool reflection. '[W]here the purpose is resolved upon and the mind determined to do it before the blow is struck, then it is, within the meaning of the law, deliberately premeditated malice aforethought.'" *Commonwealth* v. *Blaikie,* 375 Mass. 601, 605 (1978), quoting *Commonwealth* v. *Tucker,* 189 Mass. 457, 494 (1905). In the usual case, "[w]e recognize that the use of a gun in a killing is sufficient to support a verdict of murder in the first degree." *Commonwealth* v. *Lattimore,* 396 Mass. 446, 453 (1985). The defendant argues, however, that there was no evidence of a quarrel between himself and Allen, nor any evidence of a plan or scheme for killing. While he admits there was sufficient evidence of a scheme to rob, he claims there was evidence only of an impromptu conversation and a contemporaneous killing, the reason for which remains a mystery. We are not persuaded that such an argument demonstrates that the evidence of premeditation was insufficient as matter of law.

We discern no difference between this and the usual case. The use of a gun in a killing is sufficient generally to permit an inference of premeditation precisely because evidence that the defendant brought a gun with him to the scene of a planned crime is evidence of planning, which included preparation for using the gun to inflict grievous bodily harm or to kill. There was no error in the judge's denial of the defendant's motion for a required finding of not guilty due to any insufficiency of evidence as to deliberate premeditation.

B. *Admissibility of the duplicate weapon.* The defendant argues that it was error to admit in evidence a weapon identical in shape, size, configuration, and appearance to the missing murder weapon. The defendant's counsel made a timely objecton, but he did not state any ground to support that objection. His claim of error is foreclosed by our holding in *Commonwealth* v. *Ellis,* 373 Mass. 1 (1977). The duplicate weapon was relevant because, by seeing it and judging its weight, the jury were rendered more capable of inferring that the weapon with which the killer battered Gregory Smith in the head was (or was not) a "dangerous" weapon as charged. Nor was its admission barred by any exclusionary rule. See *Commonwealth*

v. *Vitello,* 376 Mass. 426, 440 (1978); *Poirier* v. *Plymouth,* 374 Mass. 206, 210 (1978). We have held that "[t]he admission in evidence of a gun, similar but not identical, to the alleged murder weapon [is] not an abuse of discretion." *Commonwealth* v. *Ellis, supra* at 7. *Commonwealth* v. *Florentino,* 381 Mass. 193, 196-197 (1980). See also *Commonwealth* v. *Russell,* 2 Mass. App. Ct. 293, 297-298 (1974).

The judge gave a clear limiting instruction, emphasizing that the weapon introduced was not the weapon actually used on the victims. The judge stated to the jury, when he admitted the substitute weapon, that "it is not the firearm in any way involved in this case."[6] There is no requirement that the judge reiterate such a cautionary instruction at the close of the case, especially in the absence of a request by counsel. There was no error.

C. *Admissibility of ballistician's testimony.* At trial, the defendant directed motions in limine and for a voir dire at the testimony of William J. Murphy. Murphy, a retired police ballistician, was permitted, despite these objections, to render his expert opinion that the bullet retrieved from Allen's head was fired from a gun found by Officer Regan on the floor of the taxicab. In this appeal, the defendant argues that the judge erred when admitting Murphy's testimony because, due to the court-ordered destruction and the inadvertent loss of ballistic evidence, as well as the lack of photographs of such evidence in this case, Murphy was not able to testify informatively.

As to the lack of photographs, we have held that the absence of ballistic photographs does not make expert ballistic evidence inadmissible. *Commonwealth* v. *Ellis, supra* at 6. For the rest, the defendant's objection appears to raise the argument that Murphy had no adequate factual basis on which to ground his expert opinion.

---

[6] The full instruction given by the judge was as follows: "This [the substitute weapon] may be marked as an exhibit, understanding, ladies and gentlemen, as has clearly been stated, this is not the firearm in question. This is only a firearm which has been characterized by the witness in the fashion that you heard from the stand. But, it is not the firearm in any way involved in this case."

Murphy testified that the basis for his opinion was not any current memory that he held of the ballistic tests which he had performed in 1977, for he freely admitted that he had no such memory. Nor did he claim that his memory had been "refreshed" in any way by reading his 1977 work sheet or the record of his testimony at the trial of Funches and Jordan in 1978. Rather, he insisted that the sole basis for his testimony was his 1977 work sheet which he examined while on the witness stand. This work sheet probably would have been admissible, although hearsay, either as an official record (see *Commonwealth v. Slavski*, 245 Mass. 405 [1923]), a business record (see G. L. c. 233, § 78 [1984 ed.]; *Commonwealth v. Sellon*, 380 Mass. 220, 230 [1980]), or as "past recollection recorded" under a well-established exception to the hearsay rule (see *Fisher v. Swartz*, 333 Mass. 265, 267 [1955]; *Bendett v. Bendett*, 315 Mass. 59, 64 [1943]). It was not offered as such on direct examination. The defendant made no objection, however, to the use of this document by the witness without its introduction in evidence. Indeed, the defendant's counsel used the document extensively on cross-examination, but he, too, did not offer it in evidence.

If the work sheet was admissible, the defendant's only available argument would appear to be that the work sheet itself was devoid of facts sufficient to support Murphy's opinion. The work sheet is not part of the record. In the absence of the document, or of a motion to strike the testimony of the ballistician, we are unable to perceive error. We note that the defendant does not argue that the work sheet did not contain the facts and opinions to which the witness testified. His argument, stripped to its essence, appears to be that hearsay evidence, unobjected to, was allowed. It is well established that hearsay evidence admitted without objection may be considered by the jury and may be given any probative value it possesses. *Freyermuth v. Lutfy*, 376 Mass. 612, 616-617 (1978). There was no error.

2. *Review pursuant to G. L. c. 278, § 33E.* The defendant raises numerous questions for the first time in this appeal, arguing issues as to which he did not preserve his rights to

appeal by timely objections at trial. We consider these issues pursuant to G. L. c. 278, § 33E. Thus, we will find reversible error "only upon a showing of grave prejudice or substantial likelihood that a miscarriage of justice has occurred." *Commonwealth* v. *Roberts,* 378 Mass. 116, 123 (1979). Additionally, in the rare case, we also have exercised our discretion under § 33E where "the rulings of the judge were free of error" but where a different result was held to be more "consonant with justice." *Commonwealth* v. *Williams,* 364 Mass. 145, 150-151 (1973). See *Commonwealth* v. *Cole,* 380 Mass. 30, 38-39 (1980). See also *Commonwealth* v. *Dalton,* 385 Mass. 190, 196-197 (1982).

A. *Lack of deliberate premeditation.* The defendant urges us to reduce the degree of his guilt to murder in the second degree. The defendant argues that the jury's finding of premeditation was questionable because (1) the evidence of premeditation was not "overwhelming," and (2) the judge neglected to instruct the jury sua sponte that voluntary drug intoxication might have rendered Stewart incapable of deliberate premeditation.

(1) *The lack of "overwhelming" evidence.* The defendant notes that we have reduced a verdict where the evidence of premeditation was "legally sufficient" but "by no means overwhelming." *Commonwealth* v. *Dalton, supra* at 196. "While analysis under § 33E can never be merely 'a process of "color matching" ' with prior cases . . . , it is useful to consider the factors that have been influential in those decisions" (citation omitted). *Commonwealth* v. *King,* 374 Mass. 501, 506 (1978). In *Dalton,* it was a highly salient fact that "[n]o motive for this killing has surfaced." *Dalton, supra* at 197. In the case at bar, the jury reasonably could have inferred that Stewart's motive for killing Allen was to prevent.him from thwarting the robbery that Stewart and Thomas so clearly intended. "In exercising our powers under G. L. c. 278, § 33E, we do not act as a second jury." *Commonwealth* v. *Sawyer,* 389 Mass. 686, 704 (1983). See *Commonwealth* v. *Cifizzari,* 397 Mass. 560, 580 (1986). Where an appeal pursuant to § 33E turns on a choice between two equally plausible inferences from the

evidence, ordinarily we will defer to the jury's choice, and we do so here.[7]

(2) *Voluntary drug intoxication.* The defendant argues that, because the judge may have believed Stewart to have been a heroin addict at the time of the murder, we should reduce the degree of Stewart's guilt due to the judge's failure to instruct the jury sua sponte that a finding of voluntary intoxication can justify a verdict, at most, of murder in the second degree.[8] The defendant misstates the law as well as the record. "Impairment of a defendant's ability to make a decision in a normal manner," through intoxication or otherwise, is only "an additional factor to be weighed" in the determination of murder in the first degree. *Commonwealth* v. *Gould,* 380 Mass. 672, 685-686 (1980). *Commonwealth* v. *Perry,* 385 Mass. 639, 648-649 (1982). "Contrary to the defendant's assertion, intoxication is not a defense to murder in the first degree . . . ."

---

[7] The defendant also directs our attention to other cases in which verdicts have been reduced in the absence of legal error. In one, however, "[t]he weapon used . . . was present fortuitously, an instrument not of design but of opportunity." *Commonwealth* v. *King, supra* at 507. By contrast, the gun which killed Allen was present, not fortuitously, but by the design of the killer who brought it with him. In another decision cited, we exercised our discretion to reduce because the murderous violence there resulted despite the fact that the defendants "intended to steal surreptitiously, not by violence as in a robbery." *Commonwealth* v. *Williams,* 364 Mass. 145, 152 (1973). By contrast, again, Allen's killer apparently intended to steal openly, by force as in a robbery and by violence if need be. Finally, in the last decision cited, "all those involved in the homicide were under the influence of alcohol or drugs . . . [and the] defendant did not fire the fatal shot." *Commonwealth* v. *Vanderpool,* 367 Mass. 743, 749-750 (1975). By contrast, of course, Stewart did fire the fatal shot himself, and the record does not disclose that he was intoxicated at the time. Thus, even if we were to decide this question by "color matching," we would have to conclude that the colors do not match to Stewart's benefit.

[8] The factual basis for the defendant's contention is tenuous, relying on a single sentence, spoken by the judge ten days after the verdicts had been rendered and the jury dismissed, and lifted from a context in which the judge was responding to counsel's arguments about the sentences he should impose for the lesser crimes of which Stewart had been convicted. The judge said: "I have to consider an offense where a heroin addict, probably, comes into an apartment and puts a firearm up against someone's head, and pulls the trigger."

*Commonwealth* v. *Costello,* 392 Mass. 393, 405 (1984). "[A]
judge need not charge on an hypothesis not supported by evi-
dence. . . . Indeed, it would be error to give a charge . . .
without some supporting evidence" (citation omitted). *Comon-
wealth* v. *Walden,* 380 Mass. 724, 727 (1980). It would have
been error for the judge here to have given an instruction on
voluntary intoxication in the absence of evidence to show that
Stewart was intoxicated by alcohol or drugs when he acted.
The record is devoid of such evidence; Stewart did not testify
about his actions prior to entering the Smiths' apartment; no
one else did either. To be sure, the jury (like, perhaps, the
judge) may have surmised that a man who would kill to get
heroin was a heroin addict; even so, such an inference does
not require the further conclusion that Stewart was intoxicated
by heroin at the time of the crime. On the record before us,
it would have been error for the judge to instruct the jury on
voluntary intoxication because to do so would have been to
invite speculation about facts not in evidence.

B. *Instructions on degrees of murder.* The defendant argues
that the judge's instructions "subtly" suggested to jurors that
they were required either to find him guilty of murder in the
first degree or to find him not guilty altogether. The judge
instructed the jury as to the distinction between murder in the
first degree and murder in the second degree. Speaking to the
jury's duty to determine the degree of the defendant's guilt,
if any, the judge stated:

> "Obviously it's your obligation to find the Defendant,
> if you find him to be guilty, guilty of the most severe
> crime that you find that he committed."[9]

After counsel for the defense requested a clarification which
would emphasize that the degrees of guilt become relevant

---

[9] As to these instructions, the defendant asked for, and got, a clarified
instruction from the judge. He now objects that the instruction, as clarified,
remained deficient. Since he did not object to the clarification in a timely
fashion, he did not preserve his rights to appeal. See *Commonwealth* v.
*Reid,* 384 Mass. 247, 258 (1981).

only after a finding that the defendant stands guilty of murder, the judge additionally instructed the jury:

> "[W]hen I said that it was your obligation, in connection with the degree of murder, to find the Defendant guilty of the most serious degree that you found that he had committed, that of course refers to the situation where you have determined that you were satisfied beyond a reasonable doubt that he had committed a murder. And, obviously, your verdict, if you were not satisfied beyond a reasonable doubt, of each and every material element of the offense of murder, would be that he was not guilty."

We perceive no "subtle" suggestion in these words that the jury were required to find the defendant guilty of murder in the first degree. To be sure, the judge instructed the jury to remember their duty, if they found Stewart guilty of murder at all, to find him guilty of "the most serious degree" or "the most severe crime" that they found him to have committed. In each instance, however, his words emphasized that they were to find him guilty only of the crime or degree "that *you* [the jury] *find* that he committed," and these words clearly imply that a choice remained with the jury. Moreover, in reminding them to choose the "most" severe or serious murder-crime or degree of murder that they might find Stewart to have committed, the judge merely reminded the jury of their option to choose between lesser and greater degrees of murder. See *Commonwealth* v. *Dickerson,* 372 Mass. 783, 797 (1977). There was no error.

C. *Instructions on consciousness of guilt.* The defendant argues that the content of the judge's instruction on consciousness of guilt was erroneously deficient.[10] He claims that

---

[10] The defendant claims that the erroneous instruction was given "[o]ver objection by the Appellant." We disagree. It is true that the defendant submitted written requests for instructions, including two that were relevant to consciousness of guilt. It is also true that the judge did not deliver those instructions verbatim as requested. The judge was not required, however, to give the charge in the words requested, so long as he covered the substance of the matter. *Commonwealth* v. *Sherry,* 386 Mass. 682, 696 (1982).

We note that, in response to the defendant's requests, the judge told counsel, "I certainly endorse the substance of it." Then, after noting that

the judge failed to instruct the jury that they were free, if they chose, not to consider the Commonwealth's evidence suggesting consciousness of guilt. Where there is evidence — such as the evidence in this case of flight and concealment (by fleeing the Commonwealth) to avoid arrest — from which the jury might infer that the defendant was conscious of his own guilt, it is the rule in this Commonwealth "that a judge should instruct the jury (1) that they are not to convict a defendant on the basis of evidence of flight or concealment alone . . ., and (2) that they may, but need not, consider such evidence as one of the factors tending to prove the guilt of the defendant" (citation omitted). *Commonwealth* v. *Toney,* 385 Mass. 575, 585 (1982). In *Toney,* we held that "[t]he charge adequately cautioned the jury concerning the equivocal nature of evidence of flight." *Id.* The instruction given in that case stated, in pertinent part, "I want to caution you however, that you should never convict a person of any crime based on evidence of consciousness of guilt alone. The reason is there are equally valid reasons for an innocent person to do what he or she may do. Evidence, if you believe it, of consciousness of guilt may be used, however, with other evidence [in determining the defendant's guilt]." *Id.* at 584 n.3.[11]

---

he would change some of the wording from what was requested, the judge concluded by saying, "I suggest you listen to what I say, and call it to my attention if I fail to give the substance of this request." Upon conclusion of the judge's instructions, he asked counsel for comments, and counsel for the defense did not object to anything in the charge on consciousness of guilt. "It is a fundamental rule of practice that where a party alleges error in a charge he must bring the alleged error to the attention of the judge in specific terms in order to give the judge an opportunity to rectify the error, if any." *Commonwealth* v. *Reid, supra,* quoting *Commonwealth* v. *McDuffee,* 379 Mass. 353, 357 (1979). The defendant's counsel failed to follow this practice, with the result that any claim of error is reviewable only by the standards appropriate to G. L. c. 278, § 33E.

[11] In *Commonwealth* v. *Matos,* 394 Mass. 563, 565-566 (1985), we ordered a new trial, and we emphasized that "the instructions which were given on consciousness of guilt did not inform the jurors that they could not convict the defendant solely on evidence of flight as consciousness of guilt." The judge in the case at bar clearly instructed the jury on this aspect of the *Toney* mandate.

At Stewart's trial, the judge charged the jury in part as follows: "[I]n an appropriate case, a person may be found to have made an implied admission by conduct which reveals a consciousness of guilt on their part for the crime with which they are charged. . . . When an implied admission is found in a case, it may be an aid, it may be a help to a jury; but it can never be the sole foundation for a conviction. It may be helpful where there is other evidence present, but alone it can never be the basis of a conviction."

The judge also made it clear that a jury need not consider evidence of consciousness of guilt unless they had, in the circumstances, concluded that the evidence showed an admission of guilt. He stated: "Now, I think the important thing about that concept is having an awareness of human nature. . . . [T]he conduct of the innocents in taking flight is not an implied admission, because in fact they were fleeing not out of a sense of guilt, but they were fleeing out of this sense of wanting non-involvement. So, you have to be perceptive of human nature. The consciousness of guilt, if it exists, must be consciousness of guilt for having committed the crime that is charged. Conduct standing alone may or may not be indicative of consciousness of guilt. Persons who have a guilty conscience may indeed act in specific ways because of it. On the other hand, persons who are entirely innocent of the crime charged may act in a guilty manner. So, be circumspect and look at all of the circumstances found when you interpret conduct that is suggestive of consciousness of guilt." We conclude this charge to have been wholly within the mandate of *Toney.* There was no error.

3. *Conclusion.* We conclude that no error was committed. We have also considered "the whole case," as we are commanded to do by G. L. c. 278, § 33E, and we conclude that nothing warrants disturbing the verdict of the jury.

*Judgment affirmed.*