COMMONWEALTH *vs.* WILLIAM M. MARQUETTY.

Bristol. September 14, 1993. - November 18, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Homicide. Evidence*, Relevancy and materiality, Judicial discretion, Knife. *Practice, Criminal*, Argument by prosecutor, Assistance of counsel, Capital case.

At the trial of a murder indictment arising from the death of the victim from multiple stab wounds, testimony of a police witness, admitted without objection, regarding a knife recovered during the search of the defendant's automobile, but never produced at trial, presented no substantial risk of a miscarriage of justice in view of the ample evidence connecting the defendant's automobile with the commission of the crime. [447-449]

Certain remarks of the prosecutor in closing argument to the jury at a murder trial, which were alleged to have irremediably created sympathy for the victim, when considered with the prosecutor's argument as a whole, the judge's instructions to the jury, and the evidence produced at trial, were not so inflammatory or unfair as to create a substantial risk of a miscarriage of justice. [449-452]

Evidence at the trial of a first degree murder indictment warranted a finding by the jury that the defendant committed the murder with a deliberate premeditation or by extreme atrocity or cruelty; accordingly, this court declined to exercise its power under G. L. c. 278, § 33E, to order a new trial or to reduce the verdict. [452-453]

INDICTMENT found and returned in the Superior Court Department on October 22, 1987.

The case was tried before *George N. Hurd*, J.

*James A. Couture* for the defendant.

*Elspeth B. Cypher*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. A jury in the Superior Court convicted the defendant, William M. Marquetty, of murder in the first degree on the basis of deliberate premeditation and with ex-

treme atrocity or cruelty. Represented by new counsel on appeal, the defendant claims error because: (1) the Commonwealth introduced testimony concerning a knife seized from the defendant's automobile, but did not produce the knife at trial; (2) the prosecutor's closing argument unfairly evoked sympathy for the victim; and (3) defense counsel provided constitutionally ineffective assistance at trial. The defendant further requests that the court exercise its power under G. L. c. 278, § 33E (1992 ed.), and order a new trial. We conclude that the conviction should be affirmed and that there is no reason to exercise our power under G. L. c. 278, § 33E, in the defendant's favor.

The jury could have found the following facts. On February 9, 1987, the victim was found in the early evening hours on a snow covered street in New Bedford. Sergeant John Silva arrived at the scene shortly after 8 P.M. He observed the accumulation of a light dusting of snow on the victim's body. Her clothing was in disarray, with her jacket pulled up around her chin, her sweater pulled up to her breasts, her right leg unclad except for a sock, and her pants and underwear pulled down around her lower left leg. Her left foot was booted. Her right boot was lying between her legs. There was a large amount of blood on the victim's upper torso and there were several holes in her sweater.

The defendant's automobile, which was usually parked in the driveway between 193 and 197 Weld Street, was not there between approximately 6:30 P.M. and 10 P.M. on February 9, 1987. A reddish brown stain was found beneath the seat cover on the foam cushion of the rear seat, and a folding buck knife was discovered under the "headliner" of the automobile. There was no visible blood on the knife and tests for occult blood (blood not visible to the naked eye) proved negative.

Sergeant James Sylvia recovered from under the front passenger seat a "large survival-type knife," which he placed in a brown paper bag. The Commonwealth did not produce this knife at trial.

Detective Richard Ferreira testified that, prior to his arrest, the defendant acknowledged that the victim lived upstairs from him, stated that she was a prostitute, and that he did not like prostitutes because they were not considered good for society. He confirmed that Sergeant Sylvia had found a large hunting knife, which was sharp on one edge and serrated on the other, under the front passenger's seat

A forensic pathologist determined that the victim had bled to death due to multiple stab wounds. He opined that, assuming the victim was alive when placed in the snow, the snow and cold would have the effect of prolonging the moment of death.

Forensic testing produced traces of occult blood on all four exterior door handles. Visible bloodstains were found in the rear of the driver's seat, on the interior of the left rear door, on the rear floor rug, on the left side of the seat belt retainer cover, and on the foam cushion under the rear seat cover of the defendant's automobile. Chemical testing also located areas on the vinyl seat covers which were positive for blood where fresh green paint had been applied. Occult blood was detected on a yellow-brown carpet which was removed from the automobile's trunk.

A forensic chemist concluded that the blood found in the rear seat was not the defendant's but was consistent with the victim's blood. A special agent examiner in the hair and fibers unit of the Federal Bureau of Investigation laboratory testified that fibers found on the victim were consistent with fibers removed from the carpeting in the defendant's automobile. She also testified that a pubic hair taken from the defendant was consistent with one found on the victim's pants.

1. *Admission of testimony regarding physical evidence not produced at trial.* The defendant argues that allowing a witness to testify regarding a knife recovered during the search of the defendant's automobile, but never produced at trial, amounted to prejudicial error because it put before the jury "very damaging evidence of the existence of a potential murder weapon while never producing the object itself." Defense counsel failed to object to the testimony about this

knife and did not cross-examine on the subject. The substance of Sergeant Sylvia's testimony pertaining to discovery of the knife was also introduced through Detective Ferreira's testimony, which was not objected to at trial or challenged on appeal. Detective Ferreira testified further regarding the details of the knife found by Sergeant Sylvia, describing it as "sharp on one edge and serrated edges on the other." Since there was no objection to this testimony, we review the claim of error only pursuant to our obligation under G. L. c. 278, § 33E, to determine whether there is a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Viriya-hiranpaiboon*, 412 Mass. 224, 231 (1992).

"The fact that, at or about the time of a crime, a defendant had a weapon that could have been used in committing the crime is admissible in the judge's discretion." *Commonwealth* v. *Toro*, 395 Mass. 354, 356 (1985). "[I]t is commonly competent to show the possession by a defendant of an instrument capable of being used in the commission of the crime, without direct proof that the particular instrument was in fact the one used." *Commonwealth* v. *O'Toole*, 326 Mass. 35, 39 (1950). Testimony regarding the discovery of a weapon, even if it is not the murder weapon, may be admitted to show familiarity with the type of weapon. See *Commonwealth* v. *Stewart*, 398 Mass. 535, 541-542 (1986); *Commonwealth* v. *Toro, supra* at 356-357; *Commonwealth* v. *Ellis*, 373 Mass. 1, 7 (1977). Relevant items recovered from the scene of a crime are admissible. *Commonwealth* v. *Westmoreland*, 388 Mass. 269, 279 (1983).

The record fails to reveal whether the knife was simply not introduced at trial, lost, or destroyed. The Commonwealth never claimed that the knife found by Sergeant Sylvia was the murder weapon. The testimony concerning the knife was brief and the prosecutor did not mention it in either his opening or closing statements to the jury. Defense counsel in his closing noted that the Commonwealth had not claimed to have uncovered the murder weapon. The defendant does not contend that the missing knife was exculpatory. In view of the plethora of evidence connecting the defendant's automo-

bile with the commission of the crime, Sergeant Sylvia's testimony concerning the missing knife did not create a substantial likelihood of a miscarriage of justice.

2. *The prosecutor's closing argument.* The defendant contends that he was so prejudiced by the prosecutor's closing argument that a new trial is required. The prosecutor's statements are set forth in the margin.[1] The defendant contends that these remarks irremediably created sympathy for the

---

[1]The portion of the prosecutor's closing argument that the defendant claims was prejudicial proceeded as follows:

"Last night, and probably not unlike every one of you, I went home and I thought and I thought and I thought. And I got a little selfish because for 22 years, most of the 22 years, I had something that I used to use each time I dug deep to try to find the eloquence to come before a jury to point out to them, to show them the way to walk along the evidence. I had two sons. And I used to lean on them at home and go to those youngsters and try to get ideas. And I talked with them: 'How do I tell these people, how do I show these people what the evidence they should consider? How do I show them that we presented enough evidence to convict, so they can return a verdict of guilty?'

"And last night I sat there alone. I sat there alone because those two youngsters, one of which is in college now, the other one which is working now, I didn't have them. I had to dig deep in myself to try and find that eloquence, to try to find those thoughts to convey to you. Now, when I did that, I thought about [the victim]. That I was probably just as selfish as [the victim]. A little bit. That I've got to let those two men fly. They've got to be off on their own, so to speak. And they have a right to do that. They have a right to grow and go into the community. And [the victim] had a right to live. An absolute right to live. So I was no different than she was last night, in my selfishness if you will, to try to reach out to explain to you best I could. . . .

"Did [the victim] just have a bad day? Did she run into a bunch of bad luck that left her lying in the snow, as you can find, on a very cold night with four stab — four or five or how many you find, stab wounds to her chest and her chin and her hands? Did she just have a bad day? . . . [A]sk yourselves was [the victim] just having a bad day when she was found in the snow with her pants and her underclothes pulled down to her ankles with her boot off, with her sweater pulled up around her chest? Was she just having a bad day, or can you find and can you infer by the position of her clothes that something had happened to her? Ask yourselves based on your experience. . . .

"[The defendant] knew her [and] had reason not to want her around. He told them, 'not good for society.' But, underlying that, [the victim] had a selfish right to live."

victim, and influenced the jury to find the defendant guilty on that basis.

Defense counsel did not object specifically to anything in the closing nor did he make a request for a curative instruction.[2] Failure to object to the closing and to ask for a curative instruction waives the right to claim error on appeal, limiting our inquiry to whether the prosecutor's statements are such that they create a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Cosme,* 410 Mass. 746, 750 (1991); *Commonwealth* v. *Kozec,* 399 Mass. 514, 518 n.8 (1987); *Commonwealth* v. *Fitzgerald,* 376 Mass. 402, 416 (1978); *Commonwealth* v. *Shelley,* 374 Mass. 466, 469 (1978), *S.C.,* 381 Mass. 340 (1980), and *S.C.,* 411 Mass. 692 (1992). We analyze the remarks in "light of the 'entire argument, as well as in light of the judge's instruction to the jury and the evidence at trial.'" *Commonwealth* v. *Yesilciman,* 406 Mass. 736, 746 (1990), quoting *Commonwealth* v. *Lamrini,* 392 Mass. 427, 432 (1984). "The prosecutor is entitled to argue the evidence and fair inferences to be drawn therefrom." *Commonwealth* v. *Paradise,* 405 Mass. 141, 152 (1989). Counsel may also suggest conclusions to be drawn from the evidence as an attempt to assist the jurors in analyzing the evidence. See *Commonwealth* v. *Lamrini,* 392 Mass. 427, 431 (1984); *Commonwealth* v. *Ferreira,* 381 Mass. 306, 316 (1980). While generally great latitude is permitted in argument, *Commonwealth* v. *Pettie,* 363 Mass. 836, 840 (1973), counsel must be careful to avoid mis-

---

[2]When the prosecutor completed his closing argument, the jury left the courtroom, and the judge held a bench conference with counsel. During this bench conference the defense counsel questioned whether the judge used something in his instructions to avoid any appeal to prejudice or sympathy. The judge responded that he "always mention[s] bias, [and] prejudice." Defense counsel then commented that he "was counting — I don't know if I've got 16, 20, I know the name [of the victim] — and [the victim] was mentioned like 20 times and it sounded more like an appeal to sympathy and prejudice rather than a closing argument and I think an appellate court will look at that." The judge responded that he heard him. The defendant argues that defense counsel's statement amounted to a timely objection and that it was error for the judge not to give a curative instruction.

stating principles of law, infringing or denigrating constitutional rights, and provoking undue sympathy or bias. *Commonwealth* v. *Haas*, 373 Mass. 545, 557 (1977), *S.C.*, 398 Mass. 806 (1986).

The prosecutor's reference to the victim's selfish desire to live and the fact that she was not just having a bad day, although of little relevance to anything in issue, were innocuous in the context of producing undue sympathy or bias. Furthermore, we assume that the jury have a reasonable measure of sophistication and are capable of sorting out hyperbole and speculation. See *Commonwealth* v. *Good*, 409 Mass. 612, 626 (1991); *Commonwealth* v. *Yesilciman, supra* at 746.

The attempted analogy between the prosecutor's personal life and selfish desire to keep his children young and at home is a deviation from the evidence and improper. Again it is difficult to imagine how these remarks could have led the jury to a verdict based on undue sympathy or bias. Lastly, any adverse impact which may have resulted from the argument would have been cured by the judge's instructions to the jury. The claimed prejudicial remarks in the prosecutor's closing argument pertained to collateral issues about the victim, not the defendant, and did not strike at the heart of the case. *Commonwealth* v. *Shelley, supra* at 470-471. The judge told the jury that opening and closing arguments are not evidence. He further stated that the jury, as the fact finders, must determine the facts solely based on the evidence produced at trial; that they were not to be swayed by prejudice or sympathy, fear, or personal likes or dislikes toward either side. The judge discussed what constituted the evidence, how credibility should be assessed, the requirement of proof beyond a reasonable doubt, and the presumption of innocence. The judge gave clear and comprehensive instructions on the Commonwealth's burden of proof, the law of criminal responsibility, and the jury's function. Accordingly, we conclude that, considering the argument as a whole, the judge's instructions to the jury, and the evidence produced at

trial, the remarks were not so inflammatory or unfair as to create a substantial likelihood of a miscarriage of justice.

3. *Ineffective assistance of counsel.* The defendant argues that his trial counsel ineffectively represented him when counsel failed seasonably to object to Sergeant Sylvia's testimony concerning the knife not in evidence and the prosecutor's closing argument. Since the defendant was convicted of murder in the first degree, "we need not focus on the adequacy of trial counsel's performance" but rather pursuant to G. L. c. 278, § 33E, "whether there was an error . . . and, if there was, whether that error was likely to have influenced the jury's conclusion." *Commonwealth* v. *Wright,* 411 Mass. 678, 682 (1992). We have previously disposed of the claims of prejudice arising from the prosecutor's closing argument and the testimony regarding the knife.

4. *G. L. c. 278, § 33E.* The defendant contends that, because the Commonwealth's case is based on circumstantial evidence, the weight of the evidence requires us to exercise our power under G. L. c. 278, § 33E, and order a new trial.[3]

In accordance with G. L. c. 278, § 33E, we are given the power and duty exercisable by a trial judge considering the facts and law on a motion for a new trial, and are required to review the whole case to determine whether there has been any miscarriage of justice in convicting the defendant of murder in the first degree. *Commonwealth* v. *Williams,* 364 Mass. 145, 150 (1973). *Commonwealth* v. *Baker,* 346 Mass. 107, 109 (1963). The fact that there is no direct evidence of contact between the victim and the defendant does not render the evidence incompetent. *Commonwealth* v. *Perez,* 357 Mass. 290, 305 (1970). " 'In cases in which [t]he evidence [is] largely circumstantial . . . it is not essential that the inferences drawn should be only necessary inferences. . . . It is enough that [the inferences] be reasonable and possible.' . . . 'To the extent that conflicting inferences are possible

---

[3]While the defendant has only requested that we grant a new trial, pursuant to G. L. c. 278, § 33E, we are obligated also to review the evidence and to direct a verdict of a lesser degree of guilt if appropriate.

from the evidence, "it is for the jury to determine where the truth lies." ' (Citations omitted.)" *Commonwealth* v. *Robertson*, 408 Mass. 747, 755 (1990), quoting *Brown* v. *Commonwealth*, 407 Mass. 84, 89 (1990), *S.C.*, 414 Mass. 123 (1993). The circumstantial evidence in this case consisted of: visible and occult blood found in the defendant's automobile that matched the victim's blood type; hair samples similar to the defendant were found on the victim; and fiber samples matching the carpeting in the defendant's automobile were found in several areas on the victim's body. This evidence was sufficient to find the defendant guilty beyond a reasonable doubt. See *Commonwealth* v. *Appleby*, 358 Mass. 407, 414 (1970); *Commonwealth* v. *Perez*, *supra* at 303.

The evidence warranted a finding by the jury that a deliberately premeditated murder or a murder by extreme atrocity or cruelty was committed by the defendant. We decline to order a new trial or to decrease the degree of guilt.

*Judgment affirmed.*